ODOM, Justice.
 

 This is a concursus proceeding which involves the distribution of $48,896.85, now in the registry of the court, among fifty-one creditors, whose claims, approved by the commissioner, amount in the aggregate to $145,159.91. The amount originally deposited was $50,000, but the trial court allowed costs amounting to $1,103.15 to be paid out of the sum deposited.
 

 The concursus was provoked and the amount deposited by the American Surety Company on July 5, 1932. The amount deposited by the surety company is the penalty stipulated in a surety or qualifying bond which it executed on February 9, 1927, for the Home Accident Insurance Company, an Arkansas corporation, in order that the latter company might engage in business in this state, under the requirements of Act No. 58 of 1921 (Ex.Sess.), as amended by Act No. 340 of 1926.
 

 The Home Accident Insurance Company, principal on the bond, after qualifying to do business here, conducted a general guaranty, fidelity, and surety bond business in this state until December 9, 1930, when it was placed in the hands of a receiver and its charter canceled at the place of its domicile in Arkansas. On January 17, 1931, Leslie P. Beard was appointed ancillary receiver for the state of Louisiana.
 

 At the time the Home Accident Insurance Company was placed in the hands of a receiver, several suits were pending
 
 *685
 

 against it, among them being one
 
 by Mrs. Bertha Brim, one by the Lyon Lumber Company, and one by Drs. Smith & Bahn. Mrs. Brim obtained judgment on her claim in the district court. Defendant appealed to the Court of Appeal, where the judgment was affirmed on January 5, 1931. Brim v. Home Acc. Ins. Co., 15 La.App. 681, 131 So. 762. This judgment not having been paid by the defendant, she brought suit against the American Surety Company, the qualifying surety of the judgment debtor. From a judgment in her favor, the defendant (plaintiff in this concursus proceeding) appealed to this court, where the judgment was affirmed on May 23, 1932, and a rehearing denied on June 30, 1932. Brim v. American Surety Co., 175 La. 41, 142 So. 910. Her judgment therefore became final on the latter date.
 

 Drs. Smith
 
 &
 
 Bahn sued the Home Accident Insurance Company and the American Surety Company, the surety on the qualifying bond, in solido, obtained judgment as prayed for and on appeal to the Court of Appeal the judgment was affirmed on June 27, 1932.
 

 The Lyon Lumber Company also sued the Home Accident Insurance Company and the American Surety Company, in so-lido. From a judgment against them, the defendants appealed to this court and the judgment was affirmed on June 30, 1932. A rehearing was not applied for.
 

 After these judgments were final, the American Surety Company, on July 5, 1932, filed the present concursus or interpleader proceeding and deposited in the registry of the Civil District Court the sum of $50,-000, the amount of the qualifying bond. It alleged that the qualifying bond was given in order to enable the Home Accident Insurance Company to qualify for business in this state; that the principal on the bond was then in the hands of a receiver; that numerous suits had been filed against it (meaning the American Surety Company) in the courts of this state, and that in all probability others would be filed in amounts which, added to those already filed, would greatly exceed the amount of the bond; that it was in grave danger of being harassed, damaged, and subjected to a multiplicity of suits “and cannot safely make payments to any claimant without the intervention and aid of this court in the exercise of its equity jurisdiction,” and that it desired to deposit in the registry of the court $50,000 cash, the amount of the bond, and to call into court all the various claimants mentioned in order that they might assert their rights to the amount deposited, thus availing itself of the provisions of Act No. 123 of 1922.
 

 In paragraph 15 of the petition it made this allegation:
 

 “Applicant disclaims any interest in the amount of said sum of $50,000 other than to see that it is equitably distributed under proper authority of this Honorable Court to the claimants whose demands appear and are proved just and proper.”
 

 It asked for a temporary restraining order prohibiting any and all claimants from the further prosecution of suits or claims of any character against it, and that all claimants be ruled to show cause why they
 
 *687
 
 should not be permanently enjoined from doing so.
 

 The temporary restraining order and the rule were issued as prayed for. The claimants named were cited and served with the rule to show cause why a permanent injunction should not issue. On July 20, 1932, a temporary injunction was issued upon plaintiff’s giving bond in the sum of $10,000.
 

 When Mrs. Brim was served, with the restraining order, she moved to dissolve or modify the order so far as she was concerned, so that she might execute her judgment, which was then final, against the American Surety Company. Her motion was denied, and she. applied to this court for writs, which were granted, and made peremptory on November 28, 1932. American Surety Co. v. Brim, 175 La. 959, 144 So. 727.
 

 The Lyon Lumber Company, instead of applying to this court for writs as Mrs. Brim did, appealed from the judgment perpetuating the injunction. The judgment perpetuating the injunction as to the Lyon Lumber Company was reversed by this court on February 27, 1933, and a rehearing was denied on March 27.
 

 As already stated, Mrs. Brim’s judgment against the American Surety Company became final on June 30, 1932, Smith & Bahn’s on June 27, and Lyon Lumber Company’s on June 30. Subsequent to any of those dates, each of the judgments was paid by the American Surety Company. Mrs. Brim’s was paid on December 1, 1932; Smith & Bahn’s on December 22, 1932; and Lyon Lumber Company’s on April 13, 1933. These payments were all made after the interpleader suit was filed (July 5, 1932). The total amount paid on these judgments was $9,470.87.
 

 On April 13, 1933, after the last of the above payments was made, and some ten months after the American Surety Company had filed its interpleader petition, it filed a supplemental petition in which it alleged that it had been forced to pay said judgments, they having become final; that the sums thus paid out by it, amounting in the aggregate to $9,470.87, were payments aside from and over and above the $50,000 deposited in the registry of the court; that it had filed its interpleader in good faith, believing at the time it could not be legally called upon to pay more than $50,000, the amount of the bond; that having been required to pay more, it should be.allowed to withdraw from the registry of the court the entire amount deposited; and, in the alternative, if not allowed to withdraw the entire amount, it should be allowed to withdraw the amount paid to the judgment creditors. It alleged that a refusal of the court to grant this relief would necessarily result in its having to pay more than the amount of the bond, in violation of the due process clauses of both the State and Federal Constitutions (Const.La.1921, art. 1, § 2; Const.U.S. Amend. 14). It prayed that the various claimants be ruled to show cause why the relief asked should not be granted. The claimants objected and the rule was discharged on May 19, 1933.
 

 We have stated at length and in detail the above facts as they appear from the record, because one of the major issues
 
 *689
 
 presented by this appeal is whether the; American Surety Company is entitled to' credit for the amount paid over and above the $50,000 deposited, or rather whether it should now be allowed to withdraw that amount from the registry of the court. The commissioner ruled against the plaintiff surety company, and his ruling was sustained by the court. It appealed.
 

 The court appointed Mr. Henry B. Curtis, an attorney, commissioner to hear and take the testimony of the claimants and to report his findings both on the facts and his conclusions as to the law applicable to all points involved. All claimants were notified, appeared and submitted their testimony.
 

 One of the creditors of the Home Accident Insurance Company notified to appear and make proof of its claim was W. V. Howland & Co., Inc., an insurance agency domiciled in New Orleans, which had represented the now defunct insurance company as general agents to write such insurance and bonding contracts as the company was authorized under the law to write, in the states of Louisiana, Mississippi, and Alabama.
 

 Howland & Co. objected to its being brought into the concursus proceeding on the ground that prior to the filing of the interpleader petition by the American Surety Company it had sued and obtained judgment against the Home Accident Insurance Company on March 2, 1932, for the full amount of its claim, which was $34,490.57. This judgment not having been satisfied, it brought suit against the American Surety Company, the qualifying surety, and obtained judgment against it on June 21, 1932. This judgment was not signed. Three days later, on June 24, the American Surety Company applied for rehearing, and plaintiff was ordered to show cause on July 8 why a rehearing should not be granted. Nothing further was done in the matter because the interpleader petition was filed before the date set for hearing on the rule.
 

 Howland & Co.’s objection to being .brought into the concursus proceeding was that the plaintiff, “having put it to the test of a trial of its lawsuit could not implead it to prove its claim again contradictorily with other claimants to the fund.” The commissioner overruled the objection, and his ruling was approved by the court.
 

 The commissioner reduced Howland & Co.’s claim from $34,950.57 to $13,037.32.
 

 Howland & Co. filed pleas of estoppel against twenty seven of those filing claims on the ground that they did not file their answers' to the interpleader petition within the delays allowed by law, invoking section 5, Act No. 123 of 1922, which provides that “The failure of any one so cited to appear and answer within the time required by law, shall thereafter estop said person from claiming said money.”
 

 The commissioner overruled the pleas and the court sustained his ruling. How-land & Co. appealed from each of the rulings against it.
 

 Attorneys for Teche Lines, Inc., whose claim amounts to $23,606^32, filed an exception to the claim of Howland & Co. on the grounds: First, that it could not legally be brought into the concursus pro
 
 *691
 
 ceeding, being a judgment creditor; second, that its claim is not secured by the qualifying bond given under the provisions of Act No. 58 of 1921 (Ex.Sess.), as amended; third, that it was engaged in a joint venture with the Home Accident Insurance Company; fourth, that its claim included business written outside of the state of Louisiana; and, fifth, that it was not a judgment creditor of the Home Accident Insurance Company.
 

 The exceptions filed by Teche Lines, Inc., were overruled by the commissioner and by the court. Its claim was approved. It appealed from the rulings on its exceptions. Teche Lines, Inc., was joined in its objection and exception by other claimants. Some of the other claimants objected to the claims filed by various claimants, but the objections were overruled and no appeals were taken.
 

 The points presented by the appeals and stressed are as follows:
 

 (1) Whether the American Surety Company, the plaintiff, should be permitted to withdraw all or any part-of the $50,-000 deposited by it in the registry of the court.
 

 (2) Whether Howland & Co. could legally be brought into the concursus proceeding.
 

 (3) Whether Howland & Co.’s claim was secured by the bond.
 

 (4) Whether the judgment reducing Howland & Co.’s claim from $34,950.57 to $13,037.32 is correct.
 

 (5) Whether those claimants who failed to file their answers within ten days are estopped from claiming any part of the amount deposited in the registry of the court.
 

 We take up and dispose of these points in the order stated.
 

 (1) The judgment of the lower court which sustained the ruling of the commissioner that the American Surety Company had no right to withdraw all or any part of the amount deposited in the registry of the court is correct. Several reasons might be assigned for sustaining the ruling, but the following are sufficient.
 

 This concursus proceeding was provoked by the plaintiff under Act No. 123 of 1922. Under the provisions of that act, when any person, firm, or corporation is in possession of a sum of money “which is claimed by two or more persons,” the amount claimed may be deposited in the registry of the court “and [it] shall thereafter be relieved of all liability for the payment of said money.” Section 1. By making the deposit, the depositor disclaims ownership of the fund and all further jurisdiction or control over it. By the very act of deposit the depositor admits that other persons own the fund. Plaintiff recognized that when it made the deposit in this case, for it said in its interpleader petition, “Applicant disclaims any interest in the amount of said sum of $50,000 other than to see that it is equitably distributed under proper authority of this Honorable Court to the claimants whose demands appear and are proved just and proper.”
 

 In American Surety Company v. Brim et al., 175 La. 959, at page 966, 144 So. 727, 729, we said:
 

 
 *693
 
 “The plaintiff, American . Surety Company of New York, disclaims all interest in the fund, save to see that it is equitably distributed, which means that it treats all lawful claimants as the owners of the fund.”
 

 After the deposit was made and the creditors were cited, they came into court and asserted their claims to the fund. Plaintiff, having admitted by the act of deposit that other persons were the owners of the fund deposited, and having caused others to come into court and claim it, could under no theory be permitted later to withdraw the deposit.
 

 The application to withdraw the deposit was made by way of an amendment to plaintiffs original interpleader petition. Under our system a plaintiff may amend his original petition, even after issue joined, with leave of the court, “provided the amendment does not alter the substance of his demand by making it different from the one originally brought.” Code Prac. art. 419. The demand made by the amendment in this case is diametrically opposed to that made in the original petition. In the original petition plaintiff disclaimed ownership of the fund; in the amendment it, in effect, claimed ownership of it, because, if it was not the owner of the deposit, it had no right to the possession of it. Pleaders are not allowed to thus shift their positions.
 

 In the alternative, plaintiff asks that it be given credit for the $9,407.87 paid to its judgment creditors, Mrs. Brim, Lyon Lumber Company, and Drs. Smith
 
 &
 
 Bahn. The claims of these creditors of the Home Accident Insurance Company were asserted by suit against the plaintiff as surety for the debtor and reduced to judgments which became final in 'courts of last resort prior to the date on which the deposit was made. In the so-called Brim Cases, cited supra, it was held that those judgments were executory against any property or fund owned by the plaintiff for reasons therein stated, and which need not be here repeated. After those judgments became final and five months after the $50,000 was deposited in the registry of the court, plaintiff paid the judgments in full, without reservation, out of its other funds. At the time the payments were made, the amount or penalty of the bond, by the voluntary act of deposit, had passed finally and irrevocably from its hands. The judgments were paid without reference to that fund.
 

 Counsel for the plaintiff surety company say that the deposit was made under the belief that plaintiff had the right to bring these judgment creditors into the concursus proceeding along with the others Even' so, it is quite evident that no such belief was entertained five months later, when the judgments were paid.
 

 These payments were not made in error, either of fact or law. Plaintiff knew all the facts and knew the law, for we had already said, after reciting the fact that this plaintiff (defendant in the Brim Cases) had stoutly resisted from the beginning .any claim against it whatever and that final judgments had been obtained against it, “The result was that there was a judgment against it; and, since it had been rendered after all due process, it was, under the ‘full faith and credit’ clause of the
 
 *695
 
 United States Constitution (article 4, § 1), just as executory in any other state' of the Union as in Louisiana; so that Mrs. Brim might, but for the injunction issued below, have entirely ignored the deposit, taken her judgment to New York, the domicile of plaintiff, and executed it there, without paying the least attention to the deposit made down here. She was not a claimant for that fund; she was a judgment creditor of this plaintiff; and Act No. 123 of 1922 had nothing whatever to do with the case. And any attempt to make her confine her judgment to the fund deposited in court by this plaintiff finds no support either in the letter or intent of Act No. 123 of 1922.” American Surety Company v. Brim et al. (In re Lyon Lumber Company), 176 La. 867, 147 So. 18, 19.
 

 The answer to plaintiff’s argument that it cannot be compelled, in any event, to pay more than the amount of the bond is found in the last above cited and the other Brim Cases, and in Klein v. J. D. & J. M. Collins, 159 La. 704, 106 So. 120, and Dugas v. New York Casualty Company, 181 La. 322, 159 So. 572.
 

 The judgment rejecting plaintiff’s demands is correct and is affirmed.
 

 (2) The next question is whether How-land & Co. was properly brought into the concursus proceeding. The lower court held that it was and the Teche Lines, Inc., and others appealed from the judgment in this respect.
 

 The reason for the attempt on the part of some of the claimants to debar Howland & Co. is that if it participates in the division of the deposit there will be^ less to distribute among the others. Attorneys for How-land & Co. also objected to its being brought in. The argument is that plaintiff had put this claimant to the test of a lawsuit and a trial in order to establish its claim, and that it had obtained judgment before the concursus was provoked.
 

 They cite the recent case of Victor v. Lewis, 182 La. 243, 161 So. 597, 598, in support of their argument. In that case we said:
 

 “The jurisprudence of this state and the common-law states is well settled that a claimant who has been put to the test of a trial by a surety, and has
 
 established
 
 his claim, may not be impleaded later by the surety in an interpleader suit, and compelled to prove his claim again with other adverse claimants.” (Italics ours.) Citing the Brim Cases and the Dugas Case, supra, and numerous other authorities.
 

 This statement of the general rule is correct, and we adhere to it. But neither that case nor those cited therein support counsel’s argument in the case at bar, for two reasons. The first is that the record in this case does not show that Howland & Co. “established” its claim prior to the date on which the concursus was provoked. The word “established,” as used by us in the Victor v. Lewis Case, means made definitely certain, settled unalterably, made final beyond question or dispute in so far as any question can be settled in a court proceeding. In the Victor v. Lewis Case plaintiff sued a real estate broker and the surety appealed to the Court of Appeal, where the judgment as to the amount of plaintiff’s claim was affirmed. A rehearing was applied for and refused.
 

 
 *697
 
 The surety subsequently provoked a concursus and deposited the amount of the bond in the registry of the court and attempted to implead the judgment creditor. As to the judgment creditor’s claim, we said:
 

 “There can be no doubt that relator’s claim has been
 
 finally and definitely established
 
 because that matter was passed upon by three courts in definitive judgments.” (Italics ours.)
 

 The facts in this case are different. The claim of Howland & Co., whatever the amount of it may be, was due by the Home Accident Insurance Company, a foreign corporation for which this claimant had acted as general agent under a contract. Its charter was revoked by the courts at its domicile in Arkansas and a receiver was appointed there. Subsequently an ancillary receiver was appointed for Louisiana. Howland & Co. sued the insurance company through the ancillary receiver in New Orleans for the amount which it claimed and propounded to him more than fifty interrogatories. The ancillary receiver answered the interrogatories and the sum and substance of what he said is that he was not answering from his own personal knowledge as to the dealings between Howland & Co. and the insurance company; that he had never examined the books of either; but assuming that the exhibits furnished him by How-land & Co. were correct, he was of the opinion that the amount claimed was justly due. No other testimony was taken. Howland & Co. asked for and was granted judgment for the full amount claimed on these answers. The trial of the case seems to have been perfunctory, as there was no real opposition to the claim.
 

 This judgment not having been satisfied, Howland & Co. brought suit against the American Surety Company.
 

 In that suit no statement was made of the nature of the claim, the suit being based on the judgment previously obtained against the Home Accident Insurance Company through the ancillary receiver. No witnesses were called to verify the account. In due course there was judgment for the plaintiff. The judgment was not signed. Defendant filed a motion for a new trial, which was never passed upon.
 

 Therefore the only testimony offered or heard to verify Howland & Co.’s claim was that given by the ancillary receiver in his answers to the interrogatories, and, as we have said, he based his answers upon the exhibits furnished by Howland & Co.
 

 Such testimony was not sufficient to “establish” the claim. It was too flimsy to be classed as proof.
 

 The second reason why it was proper to bring Howland & Co. into the concursus is that in the judgment which it obtained against the American Surety Company it was specifically stated that the judgment should not be executory against the defendant for any amount “in excess of the balance of the $50,000 bond remaining on hand with said defendant as of date of the rendition of the judgment.”
 

 The judgment was rendered'on June 21, 1932, which was prior to the filing of the interpleader petition. At that time the en
 
 *699
 
 tire amount of the bond was in the defendant’s hands, but numerous claims were being asserted against it, some by suits prosecuted to final judgment, evidently to the knowledge of the judge. His evident purpose was to restrict Howland & Co.’s recovery to the proceeds of the bond. How-land & Co. made no objection to the judgment as pronounced. Therefore when the $50,000 was deposited in the registry of the court, this claimant was properly brought in along with the others.
 

 (3) Some of the claimants, and especially Teche Lines, Inc., opposed the claim of Howland & Co. on the ground that it did not arise by virtue of any contract of insurance, indemnity, fidelity, or guaranty, and that under Act No. 58 of 1921 (Ex. Sess.), as amended, under the provisions of which the qualifying bond was given, only such claims as arise from such contracts are secured by the bond. The claim of Howland & Co. arose out of an agency contract it had with .the principal on the bond.
 

 The contention is without merit. The act, in section 1 (as amended by Act No. 340 of 1926, § 1), provides that all guaranty, fidelity, surety, and bond companies doing business in this state shall deposit with the secretary of state a bond in the sum of $50,000 in favor of the Governor, “For the use and benefit of all creditors in the State of Louisiana, * * * said bond or deposit to be held subject to any claim, liens or judgments that may be judicially obtained against them in the courts of this State, or the Federal courts in this State, or arising from any contract of insurance, or indemnity, or fidelity, or guaranty entered into in this State, and the said deposit to be liable to seizure and sale at the instance of any judgment creditor or such companies.”
 

 This language is broad and all-inclusive. The act says that the bond or deposit shall be for the use and benefit of “all creditors”; that it is to be held subject to “any claim, lien or judgment” obtained in this state; that it is liable to seizure and sale “at the instance of any judgment creditor.”
 

 This language is so plain, so clear, that the legislative intent can not be misunderstood. Clearly it was intended that the bond or deposit should be held subject to any and all debts incurred in this state by the company qualified to do business here, not only those arising from “risks” incurred in this state, but all others.
 

 Section I of the act, in speaking of the debts secured by the bond or deposit, especially mentions those “arising from any contract of insurance, or indemnity, or fidelity, or guaranty entered into in this State.”
 

 It is argued that because the act makes no specific mention of the character of the claims secured except those arising from contracts of insurance, indemnity, fidelity, and guaranty, it was intended that all others are to be excluded. In connection with this suggestion it is pointed out that the act, in section 3, provides that if any such company desires to withdraw from doing business in this state, it may do so and withdraw its deposit or have its bond canceled “upon furnishing the sec
 
 *701
 
 retary of state with satisfactory proof that it has paid and settled all claims against it on
 
 risks
 
 incurred in this state.” (Italics ours.) The word “risks,” as used in this article, unquestionably refers to claims arising from contracts of insurance, indemnity, fidelity, or guaranty.
 

 From this the argument arises that inasmuch as the act does not require the companies, in order to withdraw from the state and have their- bonds canceled, to furnish proof of the payment of any claims except those arising from “risks incurred in this state,” the deposit or bond covers no others.
 

 This does not necessarily follow. It has been the public policy of this state for many years to protect the holders and beneficiaries of insurance policies. Succession of Watson v. Metropolitan Life Insurance Company, 183 La. 25, 162 So. 790. We have no doubt that the Legislature intended, as a matter of public policy, to grant special protection to creditors of insurance companies, whose claims arose out of insurance, indemnity, fidelity, and guaranty contracts, and to that end the companies were prohibited from withdrawing their deposits or canceling their bonds without proof that all such claims had been paid. But as to debts arising out of ordinary claims, there was no more reason for requiring insurance companies to pay them before leaving the state than there would be f-or requiring other corporations or individuals to pay their private debts before departing. This is not now required, nor has it ever been.
 

 The commissioner ruled that How-land & Co.’s claim was secured by the bond, and his ruling was approved by the court. The ruling was correct.
 

 (4) The commissioner, after hearing testimony offered by Howland & Co. to establish its claim, reduced it from $34,-950.57 to $13,037.32, and his findings were approved by the judge. Howland & Co. appealed. Whether this ruling was correct or not involves purely a question of fact. The claim arises out of a general agency contract which involved the writing of workmen’s compensation insurance only. As compensation, Howland & Co. was to receive 17% per cent, of all premiums paid or collectible on the business it wrote. The commissioner found as a fact that the amount due under this clause of the contract, and for taxes and a draft paid, was $13,037.32. As no one disputes the verity of the findings on this point, it passes out of the dis.cussion.
 

 The contract further provides that “there shall be an annual accounting between the parties to this contract not later than three months after each complete calendar year * * * the purpose of which is to determine the earned, paid and collectible premiums by the party of the second part (Howland & Co.) during the preceding years; the claim costs, paid and incurred, the expenses chargeable against the earned premiums and the net profit or loss resulting therefrom as follows.”
 

 Then follow specifications as to what items shall be listed as “income” and “outgo.” The contract then provides that:
 

 “If there be á credit remaining after the deduction of all items under the heading of outgo from the total of all the items
 
 *703
 
 of income, then and in that event, the party of the first part will pay the party of the second part an additional commission of seven and one half per cent. (7%%) of the net earned premiums.”
 

 The commissioner refused to allow anything under this clause, and the court approved his ruling.
 

 It is conceded that this 7% -per cent, commission was to be due only if the business produced by Howland & Co.' was profitable to the insurance 'company. In order to determine whether the business resulted in a profit, it was specified in the contract that there should be “an annual accounting between the parties to this contract not later than three months after each complete calendar year.” There was never an accounting “between the parties” for the year 1930. Mr. Laurent, vice president of Howland & Co., testified that after the Home Accident Insurance Company failed and its affairs were placed in the hands of a receiver, he prepared and submitted to the ancillary receiver for Louisiana a “statement” showing the business produced in 1930. That was the statement which the ancillary receiver had before him when he answered the interrogatories propounded to him in the suit of Howland & Co. which we have already discussed. The books and accounts of the insolvent insurance company were not produced at the hearing before the commissioner; nor was any person formerly connected with that company called as a witness.
 

 Mr. Leslie P. Beard, secretary-treasurer and attorney for Howland & Co., was ancillary receiver for the insolvent insurance company. He testified on cross-examination (vol. 3, p. 758, et seq.) that he had never seen the books of the insolvent; had never consulted the Arkansas receiver or any one else concerning them; that the only person who would likely know anything about them was a man named Carl Charqbers, who always checked for that company the claim records of Howland & Co. Mr. Beard was asked if he had endeavored to ascertain whether Mr. Chambers had been retained by the Arkansas receiver to check the correctness of How-land & Co.’s figures and said he was informed that Mr. Chambers severed his connection with the company immediately after it went into receivership. So far as the record discloses, there was no attempt made to have Mr. Chambers present at the hearing or to take his testimony by commission.
 

 The only witnesses called by this claimant to establish its claim were W. V. How-land, president, Oliver J. Laurent, vice president, and Leslie P. Beard, secretary-treasurer, of Howland & Co. They testified that according to their books the business produced by their agency was profitable to the insurance company.
 

 Whether it was or not, it seems to us, was a matter of opinion. Certainly it was never contemplated that Howland & Co.’s books should be relied upon exclusively to determine that question. Mr. Beard says that Mr. Chambers, claim manager for the insurance company, “always checked the records of Howland & Co. in each annual settlement.”
 

 The purpose of these annual “accountings” was, to quote the contract, “to deter
 
 *705
 
 mine the earned, paid and collectible premiums * * * the claim costs, paid and incurred, the expenses chargeable against the earned premiums and the net profit or loss .resulting therefrom.” It was contemplated that these matters be determined by a settlement, an accounting between the parties, and not by the books of one of them; that there be a settlement, at which both parties should be represented. There was never any settlement of this claim.
 

 This account involves business transacted in the year 1930. A receiver was appointed for the insurance company in Arkansas on December 9, 1930. The contract provides for an annual accounting between the parties “not later than three months after each complete calendar year.” Howland & Co. made no attempt to have an “accounting” with the Arkansas receiver who was appointed by the Arkansas court to take charge of the insolvent’s affairs. He, of course, took possession of the company’s books, accounts, and records and could have had Mr. Chambers or some one else familiar with the business called to check the books and statements of Howland & Co., had it demanded the accounting and settlement.
 

 Instead of presenting its records to the Arkansas receiver Howland & Co., on January 14, 1931, one month and five days after the Arkansas receiver was appointed, provoked the appointment of an ancillary receiver for Louisiana. The person appointed was Mr. Leslie P. Beard, one of the officers of its own company. It then attempted to establish its claim by suing Mr. Beard, as ancillary receiver, and calling him as its only witness.
 

 ■> We concur in the opinion of the commissioner and the trial judge that this claimant failed to make out its case as to this item.
 

 (3) On the plea of estoppel.
 

 Some twenty-seven of the creditors who are now claiming the fund deposited in the registry of the court filed their answers more than ten days after service and citation. Each of them did, however, answer prior to any hearing or judgment. How-land & Co. and others who answered within ten days plead estoppel against all those who, without being granted extensions by the court, failed to- answer within ten days. The plea was overruled.
 

 The plea is based on sections 4 and 5, Act No. 123 of 1922, which sections read as follows:
 

 “Section 4. That service and citation of said application shall be made in the same form and manner as service and citation in civil suits, and the delays for answering shall be the same.
 

 “Section 5. That the failure of any one so cited to appear and answer within the time required by law, shall thereafter es-top said person from claiming said money.”
 

 This plea is based solely upon the proposition that the law requires those who are called into concursus proceedings to file their answers within ten days from the date of service, or be forever cut off.
 

 Act No. 123 of 1922, in section 4, does not say that they shall file their answers within ten days. It provides that citation shall be made in the same form and manner as “service and citation in civil suits,
 
 *707
 
 and the delays for answering shall be the same.”
 

 Article 180 of the Code of Practice provides that the delay expressed in the citation shall be ten days, to be counted from the time citation has been served, if the defendant reside at or within ten miles from the place where the court is held. If he reside at a greater distance, the delay for answering shall be increased by one day for each additional ten miles, the delay in no case to exceed fifteen days.
 

 What this means is that a defendant is allowed a delay of at least ten days in which to file his answer. The article of the Code does not say, nor can it be construed to mean, that in order to avoid being cut off the defendant must answer within ten days from the date of service of the citation. He may answer within ten days, but he is not necessarily cut off if he does not.
 

 When we turn to subsequent articles of the Code of Practice we learn that he may file his answer at any time before final judgment by default is rendered against him. Article 310 provides that at any time after the expiration of the delays allowed by law for filing the answer the plaintiff may take judgment by default against him. Article 312 provides that if two days after the first judgment has been rendered the defendant neither appear nor answer “definitive judgment will then be given for the plaintiff, provided he prove his demands.” Article 314 says that, “If the defendant, on the very day when a definitive judgment by default was to have been rendered against him, appear and file his answer, the first judgment taken shall be set aside,” and article 317, as amended by Act No. 85 of 1922, provides that, “It shall be sufficient in all cases for a defendant to file his answer at any time before the confirmation of a judgment taken by default against him.”
 

 It is therefore perfectly clear that the time within which a defendant in a civil suit must file his answer in order to avoid being cut off depends upon when the default is taken against him and how long the case stands on default. He is never cut off from answering until final action is taken against him.
 

 Section 5, Act No. 123 of 1922, provides that the failure of those cited in, concursus proceedings “to appear and answer within the time required by law” shall estop or cut them off from claiming said money. That means that if they do not answer within the time allowed defendants in civil suits to answer, they are es-topped or cut off, and, as we have shown, defendants in civil suits are not cut off merely because they do not answer within ten days.
 

 The only point we are called upon to decide in connection with the plea of estoppel is whether, under sections 4 and 5 of Act No. 123 of 1922, the failure of a claimant to file his answer within ten days after being served with citation, estops or forever cuts him off from claiming any of the fund deposited. We hold that it does not. The case of Graphic Arts Building Company v. Union Indemnity Company, 163 La. 1, 111 So. 470, cited by counsel, is not in point.
 

 
 *709
 
 A like conclusion was reached by the Court of Appeal, Second Circuit, in the case of American National Insurance Company v. Cook, 14 La.App. 665, 130 So. 667, decided November 7, 1930. This writer was a member of that court at the time and dissented, not because it was thought that if the answer was not filed within ten days the claimant was estopped, but because the majority seemed to think the answer had to be filed before default, for it was said, “We are of the opinion that the answer filed by Collins and Cook,
 
 prior to any defatilt having been entered,
 
 was on time.” (Italics ours.)
 

 The ruling on this point by the commissioner and approved by the court was correct.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 FOURNET, J., dissents.
 

 O’NIELL, C. J., absent.