COVINGTON, Judge:
This is an action to annul a default judgment and for injunctive relief brought by the plaintiff-appellee, Dennis Carlton, against the defendant-appellant, Electrical Maintenance & Installation Co., Inc. The facts giving rise to the instant case are essentially undisputed. On June 8, 1973, Electrical Maintenance brought suit for a money judgment against Carlton for the furnishing of labor and materials under a contract for the electrical wiring of the Carlton residence. This suit was given the Docket Number 164,468 and was allotted to Division B of the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana. Personal service was made on Carlton on June 12, 1973.
On September 24, 1973, Carlton filed an answer in which he tendered the sum of money which he admittedly owed under the contract. This answer contains a certificate of service that a copy was mailed to counsel for Electrical Maintenance that same date. The answer was incorrectly designated by Carlton’s counsel as Number 164,486 (the last two digits being transposed). This answer was filed by the clerk of court’s office in the record of the suit bearing the designated number instead of in the record of the suit between Electrical Maintenance and Carlton.
Afterwards this designated number was indicated to be the “wrong” number, apparently by the Clerk of Court’s office, and the correct number of the suit was written in above the incorrect number. On October 17, 1973, this answer was placed by the Clerk’s office in the proper record.
In the meantime, on September 20, 1973, counsel for Electrical Maintenance entered a preliminary default. On September 25, 1973, after the minute clerk testified that no answer was in the record, the preliminary default was confirmed. The default judgment was read and signed in open court on September 26, 1973.
On October 22, 1973, by an ex parte order, Carlton had the default judgment can-celled. After a hearing, the trial court recalled its ex parte order and re-instated the default judgment, being of the opinion that *883 an ex parte motion and order was not the proper remedy to use to attack the default judgment. In its written reasons the trial court stated: “The motion was not an action of nullity and did not come within the time allowed for motions for a new trial.”
On February 14, 1974, Dennis Carlton, plaintiff-appellee, filed a new suit which was given a new Docket Number, 170,112, and was also allotted to Division B. In this suit Carlton seeks the annulment of the default judgment and injunctive relief. By consent of counsel, the matter came on for hearing on February 19, 1974. The evidence offered on the hearing consisted of the record in the original action, Docket Number 164,468, and the testimony of each counsel (counsel for Carlton testifying under cross-examination). After the hearing, the trial court rendered judgment, signed on March 7, 1974, annulling the default judgment, granting injunctive relief and ordering the cancellation of the said default judgment from the mortgage records.
It is from this judgment in the action for nullity that Electrical Maintenance has appealed.
Appellant contends that an answer “setting forth in its caption an incorrect number of the action is not considered to be a legal pleading,” citing LSA-C.C.P. Arts. 853 and 1003.
Article 1003 of the Code of Civil Procedure requires that an answer comply with Article 853, which provides in pertinent part:
“Every pleading shall contain a caption setting forth the name of the court, the title and number of the action, and a designation of the pleading.”
We are thus asked to strictly construe Article 853 to the effect that an answer not containing a caption which sets forth the correct number of the action is considered as “no answer” at all.
In interpreting any particular article of the Code of Civil Procedure, we should be mindful of the procedural philosophy of the Code as expressed in LSA-C.C.P. Art. 5051.
This article is the first article of the first chapter of the first title of Book IX, and is one of the “rules of construction” of the Code of Civil Procedure. Article 5051 reads as follows:
“The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.”
The Official Revision Comment explains :
“This article expresses the procedural philosphy of this Code and serves as a constant reminder to the bench and bar that procedural rules are only a means to an end, and not an end in themselves.”
Moreover, when we are interpreting pleadings, we are specially reminded that:
“Every pleading shall be so construed as to do substantial justice.” LSA-C.C.P. Art. 865.
These two articles of the Code were interpreted in the case of Hollier v. Fontenot, La.App., 199 So.2d 600, 605 (3 Cir. 1967):
“Article 865 of the Louisiana Code of Civil Procedure provides that ‘Every pleading shall be so construed as to do substantial justice.' And, Article 5051 provides that ‘rules of procedure implement the substantive law and are not an end in themselves.’ The modern trend is toward the liberal construction of pleadings so that the ends of justice may be served, rather than technical niceties. Harsh rules of pleading are not favored, and each pleading must be reasonably construed so as to afford the litigant his day in court and to do justice.”
See also Budget Plan of Baton Rouge, Inc. v. Talbert, La., 276 So.2d 297 (1973).
*884 In keeping with the procedural philosophy of the Code, the Court in Darby v. Guastella Construction Company, La.App., 278 So.2d 565, 568 (4 Cir. 1973), held that an inadvertent error in designating the parish as Plaquemines instead of Orleans in the caption of the petition was a harmless error. In so holding, the Court said:
“ . . . the inadvertent error of writing ‘Plaquemines’ instead of ‘Orleans’ in the caption of the petition is innocuous and harmless to this defendant in this workmen’s compensation suit in view of the absence of any showing by the defendant that it was misled in believing that it was sued in fact in Plaquemines Parish.”
To the same effect is Moore v. Shell Oil Company, La.App., 228 So.2d 205, 208 (1969), wherein the Court said:
“However, here the defendants sought to raise the objection by miscaptioning it as one of ‘no right of Action’, whereas under the jurisprudence it is really one of ‘no cause of action’. Nevertheless, the courts may overlook the miscaptioning of a pleading directed at a certain end and construe it in accordance with its purpose, where no substantive unfairness results to the other party.”
Consequently, we view the designation in the caption of the answer herein by an incorrect number as an insignificant, inadvertent error. The proper designation of a pleading by the correct number of the action is in no way sacrosanct. We can not accept appellant’s contention that “no answer” was filed in the original suit, when in fact an answer was filed on September 24, 1973 (the day before the default was confirmed), and a copy of the answer was mailed to counsel of record for Electrical Maintenance.
Under Article 1002 of the Code of Civil Procedure, “the defendant may file his answer at any time prior to confirmation of a default judgment against him.”
In Globe Automobile Finance Company v. Language, La.App., 261 So.2d 708, 711 (4 Cir. 1972), the Court said:
“Moreover, an answer may be filed at any time prior to obtaining a judgment whether the time designated has elapsed or not.”
See also American Surety Co. of New York v. Ryan, 185 La. 678, 170 So. 34 (1936).
Therefore, we find that the answer filed on September 24, 1973, two days before the signing of the default judgment, was timely filed. See LSA-C.C.P. Art. 1002. Consequently, the plaintiff in the original action for a money judgment, Electrical Maintenance, was not at liberty to confirm the judgment of default against Carlton, defendant in the original action. See LSA-C.C.P. Arts. 1701 and 1702. From these articles it is apparent that it is only where the defendant “fails to answer”' timely that the plaintiff may proceed to take a default judgment against the defendant. The jurisprudence is well settled on this point.
The Court ruled in Eiermann v. Eiermann, 200 La. 26, 7 So.2d 604 (1942):
“It is only when no answer or other pleading has been filed by the defendant that a plaintiff is authorized to obtain a judgment by default (Articles 310, 311, and 321 of the Code of Practice),

Relying upon the Eiermann case, Isbell v. Pankratz, La.App., 284 So.2d 841, 842 (4 Cir. 1973), held that:
“ . . . the filing of the answer prior to the signing of a formal judgment by the trial judge operates to nullify the. judgment and requires a trial on the merits.”
Furthermore, as stated in McClelland v. District Household of Ruth, La.App., 151 So. 246, 247 (1 Cir. 1933):
“The law certainly is that judgments rendered where there has been no citation or when confirmed where an answer has been filed are absolute nullities.”
The grounds upon which the nullity of a final judgment may be demanded *885 are set out in Article 2002 of the Code of Civil Procedure, as follows:
“A final judgment shall be annulled if it is rendered: . Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken . . . ”
It is the position of the plaintiff-appellee in the instant case that the default judgment should be annulled because one of the specific grounds listed in Article 2002 exists here, namely, a valid judgment by default has not been taken.
The instant case is analogous to Termplan Gentilly, Inc. v. Parker, La.App., 281 So.2d 163 (4 Cir. 1973). In the Parker case the original defendant against whom the default judgment had been taken brought suit to annul the judgment. The ground alleged for the annulment was that there had been improper service on the defendant in the initial suit. Having found that in the initial suit there had been an improper domiciliary service on the defendant for the reason that service had not been made on “a person who resides in the residence as a member of the establishment,” the appellate court annulled the default judgment. See also Spinks v. Caddo-Bossier Services, Inc., La.App., 270 So. 2d 604 (2 Cir. 1972); and Muller v. Michel Lecler, Inc., La.App., 266 So.2d 916 (4 Cir. 1972).
One other matter needs to be considered. The appellant complains that the trial court erred in granting injunctive relief. He argues that even if the default judgment might prove to be invalid, he should still be able to proceed with the execution of the judgment against Carlton since Carlton could be adequately compensated in damages if the courts ultimately declare the default judgment a nullity. Both the general grounds for injunctive relief, LSA-C.C.P. Art. 3601, and the specific grounds of LSA-C.C.P. Art. 2298(4), militate against such a contention.
In addition, the jurisprudence of this State does not contenance the unrestraina-ble execution of an invalid judgment.
The Syllabus by the Court in State ex rel. Pelletier v. Sommerville, 112 La. 1091, 36 So. 864 (1904), reads:
“Where an action for nullity of judgment properly lies, an injunction may issue to restrain the execution of the judgment attacked . . . ”
Also, in McInnis v. Wingate, 138 La. 682, 70 So. 610 (1916), the Syllabus by the Court states:
“In an injunction suit to prevent the execution of a judgment, it is not inconsistent for the plaintiff to demand that thé judgment or the debt represented by it be decreed satisfied and extinguished, and, in the alternative, that the judgment be decreed null because rendered without proper citation.”
The danger lurking in any procedural requirement which would compel a judgment debtor to wait until the judgment creditor attempted to execute on his judgment before seeking injunctive relief is pointed out in the case of Spinks v. Caddo-Bossier Services, Inc., La.App., 270 So.2d 604, 607 (2 Cir. 1972), wherein the Court ruled:
“We do not view Article 2003 as requiring an injunction suit to be filed as a prerequisite to bringing the action in nullity but interpret Article 2003 as barring an action to annul a judgment only where the defendant has allowed execution, that is, seizure and sale, without attempting to enjoin enforcement of the judgment. (Emphasis added).”
In the Spinks case the Court held that injunctive relief was not prerequisite to an action for nullity. The Court warned, however, that if the judgment debtor allowed seizure and sale without seeking in-junctive relief, he would not be able to bring an action for nullity. An inference can be drawn from the Spinks court’s interpretation of Article 2003 that the action *886 for nullity should be coupled with an action for injunctive relief in order to furnish an adequate remedy to a judgment debtor who is attacking the validity of a judgment.
Finding no error in the trial court’s judgment, but being in accord therewith, the judgment appealed is, accordingly, affirmed at defendant-appellant’s costs.
Affirmed.