Brink and Neeland vs. Bartlett et al.

No. 13,613.

S. C. BRINK AND MRS. JENNIE NEELAND VS. J. M. BARTLETT ET AL.

SYLLABUS.

1. The creditor has the right to sue the debtor and his surety and if the surety is entitled to the benefit of discussion, he may, after judgment, have the property of the principal first seized and sold.

2. Under Statute 180 of 1894, the bonds of the contractor and of his surety must respond to the laborer's and material man's claim for labor performed or material furnished for constructing the building, although the work was performed with the material furnished to one who had a mortgage with the contractor. The contractor is liable under the statute although no attested account has ever been served on the owner.

3. The contractor who has seen the work performed and the material furnished in constructing the building, is not in a situation to deny his liability, on the ground that he has not been notified. The surety on his bond is held to the same liability.

I N RE E. H. Vordenbaumen, Applying for *Certiorari*, or Writ of Review to the Court of Appeal, First Circuit, State of Louisiana.

*Lee Emmett Thomas,* for Applicant.

*Leonard & Randolph,* for S. C. Brink, Respondent.

*Wise & Herndon,* for Mrs. Jennie Neeland, Respondent.

The opinion of the court was delivered by

BREAUX, J. Suits were brought by Mrs. Jennie Neeland and S. C. Brink against J. M. Bartlett, contractor, and E. H. Vordenbaumen, surety, on his bond for building materials furnished by them to the contractor just named. The grounds being similar, both applications—that of S. C. Brink and that of Mrs. Neeland—are passed upon and decided as on one application for both.

The facts shown by the testimony are that J. M. Bartlett, a building contractor, entered into a contract with Neith Lodge of Odd Fellows at Shreveport to construct a building for the lodge. As a contractor, he furnished a bond, as required by Statute 180 of 1894, with Vordenbaumen as surety.

Bartlett entered into a contract with A. B. Knowles to furnish the brick and do the brick work for the sum of three thousand three hundred dollars. Knowles furnished a bond with security to Bartlett.

These two bonds, one in favor of the owner, the Neith Lodge, and the other in favor of Bartlett, the contractor, were duly recorded. Bartlett fulfilled his contract and was paid. Plaintiffs in the suit above mentioned furnished Knowles with brick and stone used by Knowles in performing his part of the contract. Knowles was paid by the contractor, Bartlett, but Knowles failed to pay said plaintiffs, Neeland and Brink, who had furnished brick and stone, as before mentioned, the whole amount due them. These creditors, Neeland and Brink, brought suit for the balance due them and recovered judgment.

Vordenbaumen, security on the bond of one of the defendants in the suit in question, urges that his principal has paid Knowles and that he, in consequence, cannot be legally called upon to pay those who had sold materials to Knowles. Vordenbaumen alleges that one of the plaintiffs, Mrs. Neeland, was requested by him to have her account recorded in the mortgage office and that she failed to have it recorded. Further, he filed a plea of discussion and averred that an attested account was served on the owner of the building; that the owner, at the date it was served, had funds due the contractor ample to pay the claims due. The judge of the District Court, in the case the title of which is written above, rendered judgment against principal and security, Bartlett and Vordenbaumen. From the judgment the defendants prosecuted an appeal to the Court of Appeals. That court decided against them and affirmed the judgment against which they had appealed. The action is here both on a writ of review and *certiorari*.

We will not stop to discuss one of the propositions averred, but not argued, that the surety is not entitled to raise issues not raised by his principal. It is well settled that one who is security on a bond, as the security is here, has the right to plead the exceptions and defenses that the principal might plead. Respondents do not insist upon that defense.

In our view, the text of the Code on the subject regarding the benefit of discussion meets relator's complaint on this score. We quote: "The creditor may include in the same suit both the debtor and the surety. If he obtains judgment against both, the surety who is entitled to the benefit of discussion may insist that the judgment shall be first executed against the principal debtor." C. C. 3051. As well stated by the judge of the District Court in his reasons for overruling the plea, "the law regulating the plea of discussion does not authorize the defendant to elect for plaintiff which remedy he shall pursue, but simply gives the surety the benefit of pointing out property of the contractor subject to

execution," citing Hill vs. Miller, 7 Ann. 622, and Hill vs. Bourcier, 29 Ann. 843.

But relator insists that the furnishers of materials, Neeland and Brink, have no contractual relations with the defendants, Bartlett and Vordenbaumen, relators. That they, Mrs. Neeland and Brink, entered into a contract with Knowles to whom they must look for payment, and not to Bartlett, the contractor, or in his default, to his security, Vordenbaumen, who are, they contend, third persons. If these premises were to be granted, the conclusion would lead to a reversal of the judgment and would sustain relator's contention.

At the outset of the discussion, we find that the principal object of Statute 180 of 1894 was to protect the workman's wages better and the material man's claim. To that end, the owner is bound to obtain from the one with whom he contracts to put up his building a bond and security. One of the principal provisions of the statute is that one who enters into a contract to have a building constructed for an amount of one thousand dollars or over, must call for a bond with sufficient security from the contractor to secure the workmen and the furnishers of materials. After having done this and having had the papers recorded, he is, by the statute, left to deal with the contractor and not with the workmen and material men. We are next led briefly to consider the contractor's responsibility in this connection.

His bond stands as security for the payment of all workman's claims for work on the building and for all the materials used in the construction. The scope of the statute and the obligation of the bond are far-reaching enough to include, within the terms of the security, all wages and all amounts due for supplies furnished, whether to the first contractor or to the contractor who has bound himself to do this labor or furnish the materials to the first contractor, provided always, as relates to the materials, that they are actually used in the construction of the building as before stated.

In Willey vs. St. Charles Hotel, 52 Ann. 1581, this court recently passed upon this question and said that the bond stood as security in favor of the workmen and material men who had contracted with the contractor or sub-contractor.

Recurring to relator's proposition, stated above, that no contractual relations exist between relator and his principal on the one hand, and the furnisher of materials on the other, we think it ground enough to say in answer that the relations are statutory, and by the effect of the

statute it is to be considered as written in every contract that the workman and the furnisher of materials has the right to a direct action against the contractor and the security on his bond. One may be bound by the terms of a statute, although, *ipsissimis verbis,* no special reference is made to the obligation. We take it that this proposition is not controverted by the learned counsel for the relator. In his carefully prepared brief, he argues that the Legislature did not contemplate, in enacting the statute, to hold the contractor bound to the payment of the workmen's wages and the material men's claims.

From an early period, the workman's wages and the claims of the material man have engaged attention. True, there is nothing in the Code of 1808 regarding the claim of the material man, but regarding the workman, whose claim may be considered as being somewhat *in pari materiae,* provision was made to secure their claim against the proprietor by granting them the right to sue him for any amount due by him to the undertaker at the time of the filing of the suit. (We use the Latin words guardedly.) The claims of the material men and the laborers, as relates to class of rights, are not absolutely similar. Schwartz vs. Cronan, 30 Ann. 995.

The framers of the Code of 1825 somewhat enlarged the right of these claimants as compared to what they were under the prior Code. They could sue and cause the money due by the proprietor to be seized. They were subrogated to the privileges of the undertaker. Art. 2744 O. C. C. This article was amended by Statute 66 of 1844. Instead of authority to seize, as granted under the Code of 1825, it provided for the service of an attested account of the workmen. In the course of time the material man's claim was included within the terms of the article which had been previously amended by the statute of 1844. R. C. C. 2772, 3249, and 3272. The framers of the Constitution of 1879 ordained that additional security should be provided for the class of work we are now considering. They directed the General Assembly to enact laws to that end. Article 175 of the Constitution of 1879 (Article 185 of the Constitution of 1898). Laws were enacted upon the subject. The last is Act 180 of 1894, amended in 1896.

We have seen that laws prior to the just cited statute, as relates to the seizure, provide for the service of attested notice of claims and privileges. All this evidently was not considered protection enough. By the Act of 1894, the further security consisted, as already mentioned by us, of a bond to be made out as required by its terms. The conditions

are that the parties to the bond shall respond if called upon by a work-man or material man who has a legal claim falling within its conditions. The statute in question is silent regarding the necessity of serving any attested notice in order to be able to recover against the parties to this bond, nor does the statute require that the claim be recorded in order that one may recover. True, there is mention made of a privilege in the act, but not, as we take it, with the view of modifying or limiting the right to recover on the bond. The following, as we read, is an addi-tional guarantee of payment—quoting from the act in question: "And they shall have a privilege on the land and building if they record their sworn bills, whether the original contract is recorded or not", thus af-fording the opportunity of obtaining a right which is in its character cumulative and not one modifying or tending to modify the right se-cured by the bond. The act just cited is supplementary to prior laws on the subject of laborers' and material men's recourse for the recovery of amounts due them.

Relator insists that the act nowhere mentions sub-contractors. That is quite true, but the controlling object of the statute is to protect those whose labor and material have aided in erecting the building. This is, in substance, the idea of the act. It indicates, in the first place, a re-course against the amount paid by the owner to the contractor and it substantially imposes upon the contractor the duty of seeing that the material men and the workmen who have furnished the materials and labor, respectively, are paid.

The claim is against one who contracted with the contractor and fur-nished him with materials which could well escape the attention of the contractor as articles needed in constructing the building. He would have no building to deliver to the owner without the brick and stone furnished to one with whom he had contracted and therefore cannot plead ignorance of the fact that they were furnished as alleged. The contractor had it in his power to protect himself. We are informed by the testimony that he did require a bond from the one who defaulted in payment to plaintiffs, Brink and Neeland. A contractor is not with-out right to require evidence of payment of material men before mak-ing final payment to the one with whom he contracted and to whom the materials were furnished.

Relator cited a number of decisions. They are of a date prior to the passage of the Act 180 of 1894, except the one of Willey vs. St. Charles Hotel Co., 52 Ann. 1582, in which the court held that the material fur-

nished had not been sufficiently identified as having been used in constructing the building and in the second place it was held that the sale had been made and completed in another State and therefore did not come within the conditions of the bond furnished. The state of facts was different from the facts in the case before us for decision. Here the materials were identified and the contract therefor was made in this State and with the knowledge (as it should have been to the knowledge of) the contractor. It was not in any sense a foreign contract entered into in another State.

For these reasons, the orders *nisi* issued in these cases are recalled and discharged. The applications for the writ of *certiorari* and review are rejected.