187 So. 9

**UNITED STATES of America ex rel. LAN-
DRY v. NATIONAL SURETY CO. OF
NEW YORK.**

No. 34623.

Oct. 31, 1938.

On Rehearing Feb. 6, 1939.

Spearing, McClendon, McCabe & Schmidt, of New Orleans, for appellant American Surety Co.

Henry & Kelleher, A. M. Suthon, Denegre, Leovy & Chaffe, and Jacob H. Morrison all of New Orleans, for intervener-appellant Woodward Wight & Co.

Foster, Hall, Barret & Smith and Hollingsworth B. Barret, all of Shreveport, for appellant Mrs. Ida Lewis Cobb.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for interveners-appellees Swift & Co. and James K. Feibleman Realty Co.

Cobb & Saunders and Herman M. Baginsky, all of New Orleans, for interveners-appellees Pan American Petroleum Corporation, E. G. McKeever, and A. E. Ralston.

Curtis, Hall & Foster, of New Orleans, for Auguste Coiron.

Rene A. Viosca, U. S. Atty., and Robert Weinstein, Asst. U. S. Atty., both of New Orleans, for the United States, amici curiae.

Nicholas Callan, of New Orleans, for Robinson & Young, amici curiae.

Baldwin Allen, of New Orleans, for C. T. Patterson & Co., amici curiae.

Jacob H. Morrison, of New Orleans, for Irving Trust Co., amici curiae.

ROGERS, Justice.

On the application of Brittmar P. Landry as Trustee in Bankruptcy for Samuel L. McGlathery, Bankrupt, the Civil District Court for the Parish of Orleans appointed Auguste Coiron as Receiver for the State of Louisiana of the National Surety Company of New York.

The American Surety Company of New York was the qualifying surety on the bond of the National Surety Company of New York from February 24, 1931 to March 3, 1932. On the latter date, the National Surety Company furnished as qualifying surety on its bond the Fidelity & Deposit Company of Maryland.

After Mr. Coiron had been appointed and had qualified as Receiver, a number of the creditors of the National Surety Company of New York intervened in the receivership proceeding and impleaded as a defendant the Fidelity & Deposit Company of Maryland, as qualifying surety, and asked for judgment against that company on their respective claims. Later, some of the creditors of the National Surety Company of New York, by intervention or otherwise, called into the proceeding, the American Surety Company of New York, also as qualifying surety, asking for judgment against that company on their respective claims.

The Fidelity & Deposit Company of Maryland deposited $50,000, the amount of its bond, in the registry of the court as in concursus. The American Surety Company made no deposit in court, but vigorously contested the claims asserted against it, denying any liability whatsoever thereon.

In accordance with the provisions of Act No. 227 of 1932, the judge of the District Court appointed Oliver P. Carriere, Esq., a member of the New Orleans Bar, as Commissioner to hear the case and to make a report. The Commissioner proceeded to hear evidence on the claims asserted by the creditors of the National Surety Company, and thereafter submitted a report of his findings and recommendations. Subsequently, over the objections of certain claimants, the judge of the District Court rendered judgment sustaining the findings and adopting the recommendations of the Commissioner. The American Surety Company appealed from the judgment. Likewise, Mrs. Ida Lewis Cobb, one of the claimants, appealed from the judgment, on the ground that the Commissioner and the court had not allowed her claim in full. Mr. Coiron, the receiver, and certain of the claimants have answered the appeal of the American Surety Company.

The judgment appealed from is quite lengthy. It declares that by virtue of its deposit of $50,000 in the registry of the court, the Fidelity & Deposit Company of Maryland is discharged of all liability under its qualifying bond for the National Surety Company, and it orders that the amount of the deposit be delivered to the Receiver by the clerk of the Civil District Court, to be by him distributed as pro-

vided in the judgment; it fixes the fees of the Commissioner, the Receiver, and the attorneys for the Receiver, and directs that the fees be paid by preference and priority; it decrees that the costs of the hearing before the Commissioner be taxed as such and paid by preference and priority; that the costs of court incurred by the claimants be allowed and be paid in full by special preference; and that the costs and expenses of administration incurred by the Receiver and his attorneys also be paid by preference and priority. The judgment dismisses the interventions of three claimants, viz., Swift & Co. (J. S. McKewen claim), Jahncke Service, Inc., and the United States of America (Re: Opal Smith and Margaret Alkire). The judgment recognizes the claims of the remaining twenty-six claimants and decrees that they have judgment in their favor, in solido, in the amounts set opposite their names, and against the National Surety Company of New York and the funds deposited by the Fidelity & Deposit Company of Maryland.

The judgment decrees that the following claimants have judgment in their favor, in solido, against the National Surety Company of New York and the American Surety Company of New York in the amounts set opposite their names, and that the balance due these particular claimants, after the receipt of their pro rata share from the funds deposited in the registry of the court by the Fidelity & Deposit Company of Maryland, be paid them by the American Surety Company of New York, viz.—

| | |
|---|---:|
| 1. Mrs. Ida Lewis Cobb, Administratrix substituted for Derolice D. Cobb........... | $15,000.00 |
| 2. Sol Weiss, Successor to Weiss, Yarrut & Stich...... | 1,500.00 |
| 3. James K. Feibleman Realty Co., Inc. ................. | 5,720.00 |
| 4. Pan American Petroleum Corp. (Claim Alex Ranieri Construction Co.).......... | 2,768.97 |
| 5. Mexican Petroleum Corp. of La. ..................... | 964.80 |
| 8. Sinclair Refining Co. (J. J. McGaughhey Co. Claim)... | 3,223.98 |
| 13. Swift & Co. (Joe DeMarco Claim) ................... | 8,819.66 |
| 14. Swift & Co. (Union Berry & Truck Assn. claim)...... | 2,964.20 |
| 16. Swift & Co. (Claim Gustave A. Drewes) ............. | 265.00 |
| Total ................ | $41,226.61 |

The claims of the interveners against the Fidelity & Deposit Company and against the American Surety Company are based on the qualifying bonds executed at different times by each of the companies for the National Surety Company. Interveners contend that they are entitled to participate not only in the fund of $50,000 deposited in the registry of the court by the Fidelity & Deposit Company, but also that they are entitled to judgment against the American Surety Company.

The judgment appealed from, rendered upon the Commissioner's report, allows the claims of twenty-six of the twenty-nine interveners, with claims aggregating $164,509.21, against the fund of $50,000 deposited in the registry of the court by the Fidelity & Deposit Company, and also al-

lows the claims of nine of the same interveners with claims aggregating $41,226.-61 against the American Surety Company.

The judgment of the district court exhausts the fund deposited by the Fidelity & Deposit Company, and since that company has not appealed from the judgment, this Court is relieved of the necessity of passing on the general and special defenses set up in its pleadings in the case.

In connection with the appeal of the American Surety Company, the principal appellant, the salient facts are that the National Surety Company qualified to do business in this State under the provisions of Act No. 71 of 1904. That act requires a surety company, as a condition precedent for doing business in this State, to deposit with the State Treasurer $50,000 in cash or in bonds. Act No. 71 of 1904 was superseded by Act No. 58 of the Extra Session of 1921. Section 4 of that statute authorizes any surety company, which had complied with the provisions of Act No. 71 of 1904, to withdraw its deposit of cash or bonds, and to substitute therefor a bond for $50,000, executed by any surety company qualified to do business in this State.

On December 21, 1921, which was shortly after Act No. 58 of the Extra Session of 1921 became effective, the National Surety Company furnished the bond of the Union Indemnity Company for $50,000 as its surety, and it withdrew the securities which it had previously deposited with the State Treasurer when it entered the State.

On April 5, 1927, the New York Indemnity Company, as qualifying surety for the National Surety Company, furnished a bond for $50,000 in accordance with the terms of Act No. 58 of the Extra Session of 1921.

On February 24, 1931, the National Surety Company filed with the Secretary of State a qualifying bond for $50,000, executed by the American Surety Company, and on March 3, 1932, the National Surety Company filed with the Secretary of State a qualifying bond in a like sum, executed by the Fidelity & Deposit Company. The bond of the Fidelity & Deposit Company was the last of the qualifying bonds executed and filed with the Secretary of State at the time these receivership proceedings were instituted, on May 8, 1933.

The contention of the appellant, American Surety Company, is that the qualifying bond of the Fidelity & Deposit Company, filed with the Secretary of State on March 3, 1932, superseded the qualifying bond filed by appellant on February 24, 1931, and that thereafter appellant ceased to be liable for any debts or claims against the National Surety Company except such debts or claims as may have arisen and accrued while its bond was in effect.

The further contention of the appellant, American Surety Company, is that none of the claims involved herein arose or accrued during the existence of its qualifying bond, which was from February 24, 1931 to March 3, 1932, and that hence, under the terms of its bond, it is not liable for any of the claims asserted in this case.

The trial judge, in accordance with the recommendation of the Commissioner, rul-

ed that all claims existing before the American Surety Company filed its bond should be reduced to judgment against the American Surety Company and should also participate in the fund deposited by the Fidelity & Deposit Company, but he rejected, as against the American Surety Company, all claims that arose after the bond of the Fidelity & Deposit Company was filed with the Secretary of State. The judgment on this phase of the case was in favor of nine claimants, whose names and the amounts awarded them are enumerated therein, as we have hereinabove set forth.

It being conceded on behalf of the American Surety Company that the qualifying bond executed by the Company was in effect from February 24, 1931 to March 3, 1932, and that the Company is liable on any claim arising or accruing during that period, the questions to be determined are whether the American Surety Company is liable on any policy written by the National Surety Company subsequent to March 3, 1932, or prior to February 24, 1931, and whether the claims asserted in this case fall within the period for which the American Surety Company's liability is conceded.

The interveners contend that the American Surety Company is a statutory surety of the National Surety Company and, as such, is responsible for all valid claims against the National Surety Company irrespective of when they arose or accrued. The bond of $50,000, executed by the American Surety Company as surety for the National Surety Company on February 24, 1931, and filed with the Secretary of State on that date, was furnished pursuant to the requirements of Act No. 58 of the Extra Session of 1921, as amended by Act No. 340 of 1926.

Interveners argue that the bond required by the statute is a continuing bond. They point out that there is no provision in the statute that the bond shall be enforced only for a limited time. They maintain that a bond once executed is not cancellable, remains in effect as long as the principal of the bond continues to do business in the State, and binds the surety for the future, as well as the present, obligations of the principal. Interveners say that the only provision in the statute for the cancellation of a bond of the kind involved here is the provision contained in Section 3 providing for such cancellation when the principal withdraws from doing business in the State and furnishes satisfactory proof that it has paid and settled all claims against it.

The statute provides for only one bond of $50,000. The appellant, the American Surety Company, insists that the provision was fulfilled when the National Surety Company furnished the bond of the Fidelity & Deposit Company on March 3, 1932; that the bond of the Fidelity & Deposit Company took the place of the bond of the American Surety Company, and that thereafter all liability of the American Surety Company, under its policy, ceased.

We are not willing to say that a qualifying surety company can never be released from its obligation as long as its principal continues to do business in the State. It is not so declared in the statute and we do

not think that the statute contemplates any such result.

■ Act No. 71 of 1904, which was the original act on the subject, made no provision for the giving of bond to secure the creditors of a surety company doing business in this State. The surety required by that act was confined strictly to money or to the securities therein described in the amount or value of $50,000. Under the provisions of Section 1 of Act No. 58 of the Extra Session of 1921, surety companies doing business in the State were given the right to furnish bond in the amount of $50,000, or deposit money or securities to the value of $50,000 with the Secretary of State. Under the provisions of Section 4 of Act No. 58 of the Extra Session of 1921, surety companies, which had deposited $50,000 in cash or securities, as required by Act No. 71 of 1904, were authorized to withdraw the deposit upon furnishing bond in the sum of $50,000 as provided in Section 1; that is to say, a bond to take the place of the money or securities which had been previously deposited with the State Treasurer. The bond furnished for the release of the deposit of money or securities was in the nature of a lieu bond, since the statute specifically declares that the surety on the bond shall be liable for any obligation that the principal has incurred since it began to do business in the State. This is the only bond which, under the statute, imposes liability on the surety for any obligation of the principal existing at the time of the furnishing of the bond. The reason for this is plain. The purpose of the deposit of money or securities with the State Treasurer was to secure the claims of the creditors of the company making the deposit. If the securities were released upon the furnishing of the qualifying bond, the creditors having claims against the principal would be wholly unprotected without the provision imposing upon the qualifying surety liability for their claims. This is not the case where a qualifying bond is substituted for another qualifying bond.

■ There is no provision in the statute that the creditors of a surety company are entitled to protection in any greater amount than $50,000, whether the protection be in the form of a qualifying bond or of a deposit of money or securities. When a qualifying bond for $50,000 has been furnished or a deposit of $50,000 in money or securities has been made, it would seem that the requirements of the law have been complied with.

In this case the bond of the Union Indemnity Company took the place of the securities which the State Treasurer held for the account of the National Surety Company. The bond of the New York Indemnity Company took the place of the bond of the Union Indemnity Company. The bond of the American Surety Company took the place of the bond of the New York Indemnity Company, and the bond of the Fidelity & Deposit Company took the place of the bond of the American Surety Company.

The interveners, attempting to hold the American Surety Company, insist that as that company took no steps to have itself

released it is still liable on its qualifying bond for the National Surety Company. There is nothing in the record to show that the American Surety Company substituted another bond for its bond. If we were permitted to indulge in presumptions, we might presume that the Secretary of State, following the express provisions of the statute, required the execution of a new bond because he deemed the bond of the American Surety Company insufficient or insecure, or the American Surety Company may have demanded its release, and the National Surety Company, complying with the demand, may have executed a new bond with the Fidelity & Deposit Company as surety. On the other hand, the National Surety Company, for reasons satisfactory to itself, may have preferred to substitute a new bond for the old bond. In any event, a new bond was executed and hence, there is no room for presumptions or speculations.

■ The Secretary of State did not release the American Surety Company from the obligation of its bond. If that company was released, its release was effected under the law when the bond of the Fidelity & Deposit Company was executed, on March 3, 1932. But that release could not discharge the liability that had arisen or accrued, or might arise or accrue, on policies written and in effect prior to March 3, 1932. The case of the American Indemnity Company v. Reed, 191 Ark. 556, 87 S.W.2d 1, supports this view. In that case the Supreme Court of Arkansas held that a statutory bond may be replaced by another statutory bond even in the absence of some provision in the statute authorizing such replacement.

Another case somewhat in point is the case of State v. Powell, 40 La.Ann. 234, 240, 4 So. 46, 8 Am.St.Rep. 522. The suit was against the principal and sureties on an official bond of Powell as tax collector executed on May 26, 1880. Powell was appointed and commissioned tax collector during the recess of the Senate, and the bond sued on was given under that commission. Subsequently, having been nominated and confirmed by the Senate, he received a new commission under which he continued to exercise the duties of his office until June 16, 1884, without furnishing a new bond. The suit was for taxes collected and not accounted for between the date of the bond, May 20, 1880, and June 16, 1884. The question presented to the Court was whether the surety company was liable except for monies collected during the term of the commission under which the bond was furnished, to-wit, December 24, 1881. The Court held that a surety company was not so liable and that the surety company was responsible only for the taxes collected and not accounted for between the date of May 20, 1880 and December 24, 1881.

Some of the interveners, cite the cases of Globe Indemnity Company v. O'Connor, 147 La. 195, 84 So. 585, and Rochereau v. Jones, 29 La.Ann. 82, in support of their contention that the bonds of the American Surety Company and the Fidelity & Deposit Company are cumulative and that both bonds are in effect concurrently and authorize a recovery by a claimant

against each surety. We do not think that the cases cited support interveners' contention. Both decisions were confined to the peculiar cases of notaries. In the O'Connor case, the notary had ·applied to and obtained from the Indemnity Company a bond which, by its terms and under the law, existed for five years. The suit was against the notary to recover the premium due for the second year. This Court decided that the notary was liable for ·the premium because, under his contract and agreement and· under the law, he was bound to carry the bond for five years. In the Rochereau case, the term of the notary was fixed at four years and the delay for renewing his bond was fixed at five years. The holding of the Court was that the sureties of the notary were liable whether the bond be measured by the term of the four years' commission or by the delay of five years prescribed for the renewal of the bond.

■ Our conclusion is that the American Surety Company is not obligated for any claim arising or accruing after March 3, 1932, the date on which the bond of the Fidelity & Deposit Company was filed, unless the claim is predicated on a contract of the National Surety Company executed prior to that date.

The next question presented for decision is whether the American Surety Company is liable on any claim predicated ·on a contract entered into by the National Surety Company prior to February 24, 1931, the date on which the bond executed by the American Surety Company became effective.

■ As we have pointed out, the only provision in Act No. 58 of the Extra Session of 1921, as amended by Act No. 340 of 1926, imposing liability on a qualifying surety for the preexisting indebtedness of its principal, is the provision imposing liability on the particular surety signing the bond authorizing the release of the securities previously deposited by the principal. In this case the qualifying surety which had assumed that liability was the Union Indemnity Company. There is nothing in the statute that imposes any liability on any subsequent qualifying surety for the preexisting obligation of its principal, the National Surety Company. Nor is such liability assumed by any of the subsequent qualifying sureties under the terms of its bond. The condition of the qualifying bond, as executed by the American Surety Company, for the breach of which a cause of action arises, reads as follows:

"Now therefore, the conditions of the above obligation are such, that, of (if) the said National Surety Company, shall make prompt payment of all claims arising. and accruing to any person during the term of said bond, by virtue. of any contract of insurance or indemnity or fidelity or guaranty, entered into in this State, whenever such payment may become due, and shall promptly pay any judgment obtained in any of the Federal or State Courts of this State, arising out of any contract of insurance or indemnity or fidelity or guaranty, entered into in this State, and shall faithfully comply with and perform all and singular the duties and obligations imposed upon it, under and by reason of the pro-

visions of an Act of the Legislature of Louisiana, approved November 17, 1921, being Act No. 58 of the Extra Session of the Legislature for the year 1921, and entitled * * *."

It is true there is a further provision in the bond which reads:

" * * * that for the purpose of withdrawal of the deposit of Fifty Thousand Dollars ($50,000.00) made with the State Treasurer of Louisiana in accordance with the provisions of Act 71 of 1904, the surety on this bond shall be liable for any obligation that the said National Surety Company, has incurred since it began to do business in the State of Louisiana."

It will be noted, however, that the last quoted provision makes no reference to the case where a surety company has already deposited $50,000 in cash or securities and desires to withdraw its deposit, substituting therefor a qualifying bond. No money or securities were withdrawn on the faith of the bond executed by the American Surety Company herein. Our conclusion is that it is not liable for any claim arising or growing out of any contract entered into by its principal, the National Surety Company, prior to February 24, 1931, the date on which its qualifying bond was filed with the Secretary of State.

The first claim we are called on to consider is the claim of Mrs. Ida Lewis Cobb, Administratrix of the Succession of Derolice D. Cobb, substituted as party plaintiff, who is prosecuting an independent appeal from the judgment of the district court.

This claim grows out of the personal injuries suffered by Derolice D. Cobb, who was injured on May 7, 1930, through the negligent action of a bus owned by the Tri-State Transit Company. On October 7, 1930, Cobb filed suit against the Tri-State Transit Company in the First Judicial District Court, Parish of Caddo. On March 14, 1931, judgment was rendered by default in the District Court in favor of Cobb and against the Tri-State Transit Company in the sum of $25,000, with legal interest and costs. This judgment became final on August 1, 1931, when the appeal taken by the Tri-State Transit Company was dismissed for failure to furnish a proper bond. Derolice D. Cobb, the judgment creditor, intervened in this proceeding, claiming $25,283.95, the amount of the principal and costs of his judgment against the Tri-State Transit Company. Pending the prosecution of his claim, Derolice D. Cobb died and his widow, Mrs. Ida Lewis Cobb, Administratrix of his succession, was substituted as party plaintiff by order of court.

The claimant alleges that the Equitable Casualty & Surety Company is liable on its judgment under a policy of liability insurance which it issued on February 15, 1930, covering the Tri-State Transit Company; that the National Surety Company is liable on its judgment as the qualifying surety of the Equitable Casualty & Surety Company; that the American Surety Company is liable on its judgment as a qualifying surety of the National Surety Company, and that the Fidelity & Deposit Company is also liable on its judgment as a qualifying surety of the National Surety Company. Fol-

lowing the appeal of the American Surety Company from the judgment allowing the nine claims against it, Mrs. Ida Lewis Cobb, the Administratrix, took an appeal from the judgment, the substance of which is, that the judgment, so far as it allows her $15,000, is correct, but that it is erroneous so far as it fails to award her a solidary judgment against all the defendants for $25,283.93, less a credit of $500, which was paid on account by the Tri-State Transit Company, the judgment debtor, after this proceeding was instituted.

Claimant contends that the qualifying bond of the American Surety Company was not formally cancelled on March 3, 1932, when the qualifying bond with the Fidelity & Deposit Company was filed, and that the American Surety Company was not released from liability to Cobb, who, if he saw fit on the date of the alleged cancellation and for many months prior thereto, could have brought a direct action against the surety company; that Cobb, therefore, had a vested interest in the surety bond deposited under the law for his benefit. Claimant further contends that the American Surety Company assumed all the existing obligations of the National Surety Company when it signed the qualifying bond on February 24, 1931.

Both contentions of the claimant are answered in our general discussion of the effect of the qualifying bond executed by the American Surety Company and of that company's liability thereunder. As we have pointed out in our discussion, the American Surety Company is not obligated for any claim arising against the National Surety Company after March 3, 1932, unless the claim is based on a contract of the National Surety Company executed prior to that date. We have also pointed out in our discussion that the bond itself does not provide that the surety company will be liable for any obligation that its principal, the National Surety Company, had incurred since it began business in this State. The provision of the bond relied on by claimant, in support of her contention, refers only to the case where it has already deposited $50,000 in cash or securities and desires to withdraw them and substitute a qualifying bond in lieu thereof. No cash or securities were withdrawn on the faith of the bond executed by the American Surety Company. The condition of the bond given by the American Surety Company is that it shall make prompt payment of all claims arising and accruing to any person during the term of the bond, by virtue of any contract of insurance or indemnity or fidelity or guaranty entered into in this State, etc.

It is contended on behalf of claimant that the obligations of the qualifying surety company are fixed by the date of the judgment obtained against the Tri-State Transit Company. We do not think this contention is sound. The judgment is merely the evidence of the claim or debt. Cobb's claim against the Tri-State Transit Company arose when the accident occurred in which he was injured. The accident occurred on May 7, 1930. Cobb's suit was filed in the District Court on October 7, 1930. On both dates the qualifying surety of the Equitable Casualty & Surety Company, the surety for the Tri-State Transit Company, was the

National Surety Company. The qualifying bond of the American Surety Company did not come into existence until February 24, 1931, which was almost a year after the accident occurred and more than four months after the suit was brought. It is true that the judgment obtained by Cobb against the Tri-State Transit Company was rendered on March 14, 1931. But the judgment did not create Cobb's claim. It merely decreed the validity of the claim which actually arose at the time of the accident.

The provision in the statute that the bond shall be held subject to any claims, liens or judgments that may be judicially obtained in the courts of this State can only refer to the bond that is in existence when the claim or lien arises and which is reduced to judgment, whatever may be the date on which the judgment is rendered. We do not find anything in the case of American Surety Company v. Ryan, 185 La. 678, 170 So. 34, cited by claimant, that conflicts with the views we have hereinabove expressed.

Under her appeal, Mrs. Ida Lewis Cobb, Administratrix, asked that the judgment for $15,000 in her favor be increased to $30,000. Appellant bases her demand for an increase of the judgment on the provisions of Act No. 292 of 1926, which requires that a motor carrier, before obtaining a certificate of convenience and necessity from the Louisiana Public Service Commission, furnish a policy or bond in the sum of $30,000 on each motor vehicle having a seating capacity of more than seven passengers. But the policy issued by the Equitable Casualty & Surety Company contained a provision limiting its liability in cases of personal injury to $15,000. The Public Service Commission accepted the policy.

Appellant's claim against the American Surety Company is not well-founded; hence, as we have shown, no liability whatever exists to appellant on the part of this company. Appellant's claim against the receivership of the National Surety Company is necessarily predicated on the bond issued by its principal, the Equitable Casualty & Surety Company, and since, under the terms of its bond, the liability of that company is limited to $15,000, we find no warrant for holding that a claim under the policy can be allowed in any greater sum than is stipulated in the contract.

We shall dispose of claimant's demand for interest in connection with similar demands by other claimants.

Passing to the other claims for which judgment was rendered by the district court against the American Surety Company, we take up first the claim of Sol Weiss, as successor to Weiss, Yarrut and Stich. The amount of the judgment is $1,500. The claimant, who is an attorney, was consulted by the National Surety Company during the period beginning March 16, 1931, and ending August 5, 1931, with reference to its liability on its qualifying bond for the Equitable Casualty & Surety Company. The qualifying bond was signed by the National Surety Company for the purpose of enabling the Equitable Casualty & Surety Company to do business in this State. Various claims were asserted

against the National Surety Company on its qualifying bond and these claims, seven in all, were referred to Weiss for legal advice and attention. There is no dispute on the part of the Receiver of the National Surety Company that Weiss rendered the services claimed; that he was entitled to compensation therefor, and that $1,500 is a reasonable allowance for his work. The attitude of the Receiver in this respect is borne out by the record. Since the services were rendered by the claimant to the National Surety Company during the time the American Surety Company was its qualifying surety, we find no merit in its appeal from that part of the judgment.

■ The next claim presented for consideration is the one filed by the James K. Feibleman Realty Co., Inc., in which the claimant seeks judgment against the American Surety Company on the ground that it was the qualifying surety of the National Surety Company from February 24, 1931, to March 3, 1932. The claim is based on a written contract entered into by the claimant with the National Air Control Sales Company on April 28, 1931, and upon a bond executed in connection with the contract on May 11, 1931, and a supplemental bond executed under date of September 24, 1931, for the installation of a cooling system. This contract contained a guaranty of performance, out of the breach of which this claim arises. On January 23, 1932, the cooling system, having been physically completed, was accepted by the claimant and, on February 6, 1932, the architect issued a certificate entitling the contractor to final payment and that payment was prompt-

ly made. At the time of acceptance and final payment, the cooling system did not and could not be tested for compliance with the contract guaranteeing as to performance because of the season of the year. Neither the contract nor the bond contained any provision obligating the owner to retain any part of the contract price pending a test of the cooling system for performance. Moreover, the contractor's guaranty of performance is not merely a guaranty of a particular occasion but it is a continuing guaranty.

■ The evidence shows that when the cooling system was actually put into operation during the summer of 1932, it failed to produce the results guaranteed as to cooling. Thereafter, on February 6, 1933, the Feibleman Company filed suit in the Civil District Court for the Parish of Orleans against the National Air Control Sales Company for $29,383.20 as damages due to the installation of an allegedly defective cooling system. That suit was not tried. Subsequently, Feibleman Company, on the advice of its architect, installed a supplemental cooling device known as a Calo-Cumulator. The contract for this additional equipment was made on February 16, 1933, and its installation was completed in July, 1933. The evidence shows that the installation of this additional equipment has made the cooling system operate as stipulated and guaranteed in the contract. The intervener claims $6,330 as the price of installing the Calo-Cumulator. The proof shows that the amount actually paid for its installation was $5,720, and judgment for that amount was rendered accordingly.

The American Surety Company contends that the contractor's surety is not liable for the cost of installing the Calo-Cumulator because that particular piece of equipment was not specified nor provided for in the original contract bonded by the National Surety Company. The answer to this contention is that the amount paid for the installation of the ·Calo-Cumulator represents the cost of making the cooling system function in accordance with the contractor's guaranty; or in other words, this amount represents the measure of damages for the breach of the bonded contract guaranty as to performance.

The Calo-Cumulator was not purchased and maintained until after the contractor and the National Surety Company had been put in default and had failed and refused to remedy the defects in the cooling system as they were obligated to do under the contract and bond.' The claim of Feibleman Company against the National Surety Company unquestionably relates back to January, 1932, and the American Surety Company concededly is liable for claims against the National Surety Company originating at that time. The liability of the National Surety Company to Feibleman Company was not created by anything occurring after January, 1932. The active breach of the contract, which the surety company had bonded, occurred when the inadequate and insufficient cooling system was completed in January, 1932. The subsequent events merely furnish proof that the breach of the contract had occurred and they fix the amount of the damages therefor. Our conclusion is that the judgment against the American Surety Company on the principal of the Feibleman claim is correct.

Feibleman Realty Company has answered the appeal seeking an amendment of the judgment in its favor by an allowance of interest. We shall dispose of the claim for interest later.

 The Pan American Petroleum Corporation and the Mexican Petroleum Corporation furnished certain petroleum products to the Alex Ranieri Construction Company, the general contractor on a certain Federal Levee project. The National Surety Company became the contractor's surety under the Act of Congress known as the Heard Act, 40 U.S.C.A. § 270. Under the terms of the contract, the National Surety Company guaranteed that the contractor would promptly pay all suppliers of labor and material used in the performance of the work called for by the contract. Both corporations fully proved up their claims and they were allowed by the Commissioner, and his ruling was affirmed by the trial judge.

The American Surety Company complains the judgment is erroneous, contending that the claims arose after March 3, 1932, on which date its bond was cancelled by the filing of the bond of the Fidelity & Deposit Company. The contention is untenable. The contract entered into by the Federal government with the Ranieri Company was dated October 12, 1931, and the bond of the National Surety Company guaranteeing the payment of the claims of the laborers and material men was executed on the same day. At that time the American Surety

Company was the qualifying surety for the National Surety Company and therefore was responsible for the obligations assumed by its principal under its contractor's bond. The American Surety Company further contends that under the Heard Act the debts were not demandable from the Federal government for the reason that the period within which the claims could be asserted under the Act had not expired. The Commissioner rejected this contention, holding that inasmuch as the claimants were prevented from complying with the provisions of the Heard Act by the filing of the receivership proceeding, their claims were timely and properly filed. This ruling was approved by the trial judge. We think it is correct.

The Pan American Petroleum Corporation and the Mexican Petroleum Corporation have filed answers to the appeal complaining that they were not allowed interest on their claims. We shall discuss this complaint hereafter.

 In its answer to the appeal, the Pan American Petroleum Corporation finds fault with the action of the Commissioner and the trial judge refusing to recognize its claim against the American Surety Company for certain petroleum products furnished the Kreis Construction Company, a general contractor, for use in the construction of a certain levee within the State. The National Surety Company was the surety on the contractor's bond which was signed on August 31, 1932. As the contract and bond were executed after March 3, 1932, the date on which the qualifying bond of the Fidelity & Deposit Company became effective, the Pan American Petroleum Corporation is not entitled to a judgment against the American Surety Company on this claim. The judgment complained of is correct.

 With reference to the objection of the American Surety Company to the judgment in favor of the Sinclair Refining Company, we find from the record that the claim of the refining company is for the furnishing of materials to the J. J. McCaughey Company for use in the construction of certain levees in the Tensas Levee District. The National Surety Company was the surety on the contractor's bond. The contract and bond were executed on October 12, 1931, which was within the time the American Surety Company was the qualifying surety for the National Surety Company. The claimant proved its claim and the judgment in its favor against the American Company is correct.

Swift & Company, pursuant to the recommendations of the Commissioner, obtained judgment in the district court against the fund deposited by the Fidelity & Deposit Company and against the American Surety Company. The judgment embraces three claims growing out of the alleged defalcations of Joe De Marco, Union Berry & Truck Association, and Gustave A. Drewes. The American Surety Company questions the correctness of the judgment on the ground that claimant failed to prove that the alleged defalcations occurred while its bond was in effect.

These claims arose under certain blanket fidelity bonds executed by the National

Surety Company and guaranteeing Swift & Company against loss due to the embezzlement, misappropriation, etc. of any of its employees, agents, etc. Joe De Marco and the Union Berry Association, as agents of Swift & Company, sold fertilizer, on credit, to various strawberry growers in the Parish of Tangipahoa. During the movement of the crop, and acting in the capacity of agents of Swift & Company, De Marco and the Association collected from the farmers the notes and open accounts belonging to their principal and arising out of these sales of fertilizer. The collections were made by these agents of Swift & Company on written contracts and trust receipts obligating the agents to segregate and remit to their principal all monies collected for its account. The amounts for which judgment was rendered on these claims represent monies of Swift & Company collected by these agents but not remitted by them to their principal. The Drewes claim arises out of the theft by him of certain meats and meat products belonging to Swift & Company in New Orleans. Drewes sold the stolen articles and retained the proceeds. The blanket fidelity bonds under which Swift & Company is prosecuting these claims were executed by the National Surety Company in 1911, 1921 and 1929, and the bonds were kept in force by the payment of annual premiums by Swift & Company up to and through the annual period ending September 30, 1932.

The contract under which Joe De Marco acted as agent of Swift & Company in the transaction above discussed is dated November 6, 1931, and trust receipts signed by him for the notes and accounts involved in this claim are dated February 15, 1932. As the American Surety Company was the qualifying surety of the National Surety Company on October 1, 1931, it is liable on this particular claim and the judgment so holding is correct.

The agency contract of the Union Berry & Truck Association is dated September 17, 1930, and the trust receipts signed by that agent are dated February 11, 1932, and the unremitted collections were made by this agent subsequent to March 3, 1932. As the agency contract under which this claim arose was executed before the bond of the American Surety Company came into existence and as the unremitted collections were made after it ceased to be effective, we do not think that any liability attaches to the American Surety Company on this claim and, therefore, the judgment so holding is incorrect.

With reference to the claim of Swift & Company predicated on the alleged defalcations of Gustave A. Drewes, the evidence shows that the theft of the property of Swift & Company by this employee began on August 1, 1932, and covered a period of seventeen weeks. At that time the qualifying bond of the American Surety Company was not in effect and, therefore, the judgment holding it liable on this claim is erroneous.

Swift & Company has answered the appeal of the American Surety Company, asking for interest on the principal amount of its claim. This claim will be considered hereafter.

 Auguste Coiron, Receiver of the National Surety Company of New York, the Irving Trust Company, Trustee in Bankruptcy of United Cigar Stores of America, the co-partnership of Robinson and Young, and Kate McFall Henson have answered the appeal of the American Surety Company, asking for a modification of the judgment so as to decree that the claims of the nine claimants allowed against the American Surety Company be paid by that company primarily and that said claimants be allowed to participate in the fund deposited by the Fidelity & Deposit Company only in the event their claims remain unpaid after full recourse has been had on the American Surety Company. Woodward Wight & Company, whose claim was allowed only against the fund deposited in court by the Fidelity & Deposit Company, has taken a devolutive appeal from the judgment, under which it alleges it is entitled to similar relief.

The answer of the Receiver to the appeal can not be considered since he has no interest in championing the right of one claimant against another. The answers to the appeal of Irving Trust Company, Trustee in Bankruptcy, Robinson & Young and Kate McFall Henson, can not be considered because they are asking for a modification of the judgment against co-appellees. As the devolutive appeal of Woodward Wight & Company was taken at a subsequent session of the district court, it was necessary to cite the appellees in order to perfect the appeal. This was not done; hence we can not consider the appeal.

 With reference to the demand for interest set up in the answers to the appeal of the American Surety Company by the James K. Feibleman Realty Co., Inc., Swift & Company, Pan American Petroleum Corporation and the Mexican Petroleum Corporation, and the appeal of Mrs. Ida Lewis Cobb, Administratrix, we find that the claimants are not entitled to any interest on their respective judgments against the fund deposited in court by the Fidelity & Deposit Company. Where interest is not allowed to all, no interest should be allowed to particular claimants. J. S. Brock, State Bank Commissioner, v. Citizens State Bank & Trust Company, in Liquidation, 190 La. 572, 182 So. 679, decided June 27, 1938. So far as the demands for interest against the American Surety Company are concerned, we think they should be allowed the claimants obtaining judgment against that company. The American Surety Company disputed its liability and made no deposit in court to meet the claims asserted against it.

For the reasons assigned, the judgment appealed from is annulled so far as it awards judgment in favor of Mrs. Ida Lewis Cobb, Administratrix, substituted for Derolice D. Cobb, Swift & Company on the Union Berry & Truck Association claim, Swift & Company on the Gustave A. Drewes claim against the American Surety Company, and said claims are dismissed. It is further ordered that the judgment against the American Surety Company in favor of the James K. Feibleman Realty Co., Inc., Swift & Company on the Joe De Marco claim, the Pan

American Petroleum Corporation, and the Mexican Petroleum Corporation, be amended so as to award the said claimants interest on the principal of their respective claims at the rate of five per cent per annum from judicial demand until paid. In all other respects the judgment appealed from is affirmed; all costs of appeal to be paid by the American Surety Company.

O'NIELL, C. J., and LAND, J., absent.

## On Rehearing.

LAND, Justice.

The judgment of the Civil District Court for the Parish of Orleans decrees that the claimant, Mrs. Ida Lewis Cobb, Administratrix substituted for Derolice D. Cobb, have judgment in her favor, in solido, against the National Surety Company of New York and the American Surety Company of New York in the amount of $15,000, and that the balance due this claimant, after the receipt of her pro rata share from the funds deposited in the registry of the Court by the Fidelity & Deposit Company of Maryland, be paid claimant by the American Surety Company of New York.

The claim of the intervener, Mrs. Ida Lewis Cobb, Administratrix, against the American Surety Company and against the Fidelity & Deposit Company, is based on the qualifying bonds executed at different times by each of these companies for the National Surety Company.

Intervener contends that she is entitled to participate, not only in the fund of $50,-

000 deposited in the registry of the court by the Fidelity & Deposit Company, but also that she is entitled to judgment against the American Surety Company.

In our original decree, the judgment appealed from is annulled, in so far as it awards judgment in favor of Mrs. Ida Lewis Cobb, Administratrix, substituted for Derolice D. Cobb, against the American Surety Company, and the claim is dismissed to that extent.

(1) The application for rehearing herein granted protests against the dismissal of intervener's claim against the American Surety Company of New York, and against the reduction of intervener's judgment to $15,000, against the National Surety Company of New York.

The relation of the parties involved in this claim is as follows:

The Tri-State Transit Company operated the bus which caused the injury of Derolice D. Cobb, the claimant's deceased husband.

The Equitable Casualty and Surety Company was the automobile liability insurer of the Tri-State Transit Company.

The National Surety Company, as surety, executed the qualifying bond of the Equitable Casualty and Surety Company.

The American Surety Company, on February 24, 1931, became the surety on the qualifying bond of National Surety Company.

The Fidelity and Deposit Company of Maryland, on March 3, 1932, executed, as

surety, the qualifying bond of the National Surety Company.

The Fidelity & Deposit Company of Maryland deposited $50,000, the amount of its bond, in the registry of the court as in concursus.

The American Surety Company made no deposit in court, but is vigorously contesting the claims asserted against it, denying any liability whatsoever thereon.

(2) The contention of the appellant, American Surety Company, is that the qualifying bond of the Fidelity & Deposit Company, filed with the Secretary of State on March 3, 1932, superceded the qualifying bond filed by the American Surety Company on February 24, 1931, and that thereafter appellant ceased to be liable for any debts or claims against the National Surety Company, except such debts or claims as may have arisen and accrued while its bond was in effect.

The further contention of the appellant, American Surety Company, is that none of the claims involved herein arose or accrued during the existence of its qualifying bond, which was from February 24, 1931, to March 3, 1932, and that hence, under the terms of its bond, it is not liable for any of the claims asserted in this case.

The conditions of the qualifying bond, as executed by the American Surety Company, for the breach of which a cause of action arises, reads as follows:

"Now, therefore, the conditions of the above obligations are such, that, of (if) the said National Surety Company, shall make prompt payment of all claims arising and accruing to any person during the term of said bond, by virtue of any contract of insurance or indemnity or fidelity or guaranty, entered into in this State, whenever such payment may become due, and shall promptly pay any judgment obtained in any of the Federal or State Courts of this State, arising out of any contract of insurance or indemnity or fidelity or guaranty, entered into in this State, and shall faithfully comply with and perform all and singular the duties and obligations imposed upon it, under and by reason of the provisions of an Act of the Legislature of Louisiana, approved November 17, 1921, being Act No. 58 of the Extra Session of the Legislature for the year 1921 and entitled * * *".

It is provided in Section 1 of Act No. 58 of the Extra Session of 1921 that "said bond or deposit to be held subject to any claim, liens or judgments that may be judicially obtained against them in the courts of this State, or the Federal courts in this State, or arising from any contract of insurance, or indemnity, or fidelity, or guaranty entered into [in] this State." There is nothing originally in Act No. 58 of the Extra Session of 1921, nor in this act as amended by Act No. 340 of 1926, that imposes any liability on any subsequent qualifying surety for the pre-existing obligation of its principal. Nor is such liability assumed by any of the subsequent sureties under the terms of its bond.

It is clear, therefore, if the claim arises during the term of the bond signed by a particular qualifying surety, that that par-

ticular surety, and not a subsequent qualifying surety, is liable for the claim when reduced to judgment.

 The bond required by Act No. 58 of the Extra Session of the year 1921, as amended by Act No. 340 of 1926, is not a single bond of $50,000, filed by all of the Guaranty, Fidelity, Surety and Bond Companies doing business in the State, with one or more Guaranty, Surety and Bond Companies as sureties thereon; but each Guaranty, Fidelity, Surety and Bond Company doing business in the State is required by the Act to give a separate bond in that amount with such sureties.

 Nor does Act No. 340 of 1926 declare that any of these separate surety bonds shall be deemed a continuous bond, as contended by the intervener, Mrs. Ida Lewis Cobb, Administratrix.

Under Article 2315 of the Revised Civil Code, "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it." In other words, a tort under the law of this State creates an obligation from which a cause of action for damages arises.

As declared in Articles 28, 31, and 32 of the Code of Practice: "Personal actions are grounded on one of four causes which give rise to personal obligations. The causes are contracts, or quasi contracts, offenses, or quasi offenses." Article 28.

"Personal actions arise from offenses, as when one has become liable to another for the injury he has inflicted on him by some crime or offense, such as theft or slander." Article 31.

"Personal actions arise from quasi offenses, when the ground of action is the injury done to another by one of those faults which are not considered as real crimes or offenses." Article 32.

Necessarily, Cobb's claim for damages against the Tri-State Transit Company arose when the accident, in which he was injured, occurred on May 7, 1930.

Cobb's suit was filed in the District Court on October 7, 1930. On both dates, the qualifying surety of the Equitable Casualty and Surety Company, the automobile liability insurer of the Tri-State Transit Company, was the National Surety Company.

The American Surety Company became the surety on the qualifying bond of the National Surety Company on February 24, 1931, almost a year after the accident occurred and more than four months after the suit was brought.

The condition of the bond given by the American Surety Company is that it shall make prompt payment of all claims arising and accruing to any person during the term of the bond, by virtue of any contract of insurance or indemnity or fidelity or guaranty entered into in this State.

 It is true that the judgment obtained by Cobb against the Tri-State Transit Company was rendered on March 14, 1931. But the judgment did not create Cobb's claim, as contended by intervener, Mrs. Ida Lewis Cobb, Administratrix. It merely created the validity of the claim which actually arose at the time of the accident. We so held in the original opin-

ion and adhere to the conclusion then reached by this court.

(3) We also held in the original opinion that Mrs. Ida Lewis Cobb, Administratrix, was not entitled to an increase of the judgment in her favor from $15,000 to $30,000. This increase is asked under the provisions of Act No. 292 of 1926, which requires that a motor carrier, before obtaining a certificate of convenience and necessity from the Louisiana Public Service Commission, furnish a policy or bond in the sum of $30,000 on each motor vehicle having a seating capacity of more than seven passengers.

But the policy issued by the Equitable Casualty & Surety Company contained a provision limiting its liability to $15,000 in cases of personal injuries, and the Public Service Commission accepted the policy.

We find no warrant for holding that a claim under the policy can be allowed in any greater sum than that stipulated in the contract, since appellant's claim against the receivership of the National Surety Company is necessarily based on the bond issued by its principal, the Equitable Casualty & Surety Company, in which the liability of that company is limited to $15,000.

Appellant's claim against the American Surety Company is not well-founded, as we have already shown.

(4) The American Surety Company, on February 24, 1931, became surety on the qualifying bond of the National Surety Company. This bond was in existence from February 24, 1931, to March 3, 1932, when the Fidelity and Deposit Company of Maryland became surety on the qualifying bond of the National Surety Company.

In the original opinion we have found that the following debts or claims arose while the American Surety Company was surety on this qualifying bond of the National Surety Company and is liable for same:

| | | |
|---|---|---|
| (2) Sol Weiss, Successor to Weiss Yarrut and Stich... | $ 1,500.00 |
| (3) James K. Feibleman Realty Co., Inc.................. | 5,720.00 |
| (4) Pan American Petroleum Corp; (Claim of Alex Ranieri Construction Co.) ....... | 2,768.97 |
| (5) Mexican Petroleum Corp. of La. ................. | 964.80 |
| (8) Sinclair Refining Co. (J. J. McGaughhey Co. Claim) ................. | 3,223.98 |
| (13) Swift & Co. (Joe De Marco Claim) .............. | 8,819.66 |
| Total .............. | $37,997.41 |

We have found no good reason for changing the result on the application for rehearing granted to the American Surety Company in this case.

(5) Judgment was rendered in the lower court in favor of Woodward, Wight & Company, Ltd., against the National Surety Co. of New York, and the funds deposited by the Fidelity & Deposit Company of Maryland, in solido, in the sum of $4,430.10, to be paid on a pro rata basis from the $50,000 deposited in the registry of the Court by the Fidelity & Deposit Company of Maryland.

A devolutive appeal was taken from this judgment at a subsequent session of the court. As it was necessary to cite the appellees in order to perfect the appeal, and it appeared from the record that this had not been done, the appeal was not considered by this court in its original opinion.

However, a rehearing was granted to Woodward, Wight & Company, Ltd., when it was pointed out in its application that, as a matter of fact, the attorneys for the appellees in this concursus proceeding had accepted service of the petition of appeal, but, through inadvertence, the documents evidencing the waivers of citation of appeal were omitted from the supplemental transcript filed by Woodward, Wight & Company, Ltd., in this court.

As the appeal is now properly before us, we will consider same.

The judgment of the lower court recognizes the claims of twenty-nine claimants, including the claim of Woodward, Wight & Company, Ltd., for $4,430.10 and decrees that all of these claimants have judgment in solido in the amounts set opposite their names against the National Surety Company of New York, as principal, and against the funds of $50,000 deposited by the Fidelity & Deposit Company of Maryland, the qualifying surety on the bond of the National Surety Company of New York.

Among these twenty-nine claimants are nine claimants, who also have judgment in their favor, in solido, against the National Surety Company of New York and

the American Surety of New York, the qualifying surety on the bond of the National Surety Company of New York, in the respective amounts set opposite their names. This judgment decrees that the remainder due these nine claimants, after their pro rata payment from the funds of $50,000 deposited in the registry of the court by the Fidelity & Deposit Company of Maryland, be paid them by the American Surety Company of New York, qualifying surety on the bond of the National Surety Company of New York. See Judgment, Report of Commissioner, pages 89, 90 and 91.

The total claims of all of these twenty-nine claimants in solido against the National Surety Company of New York and its surety, the Fidelity & Deposit Company of Maryland, to be paid on a pro rata basis from the $50,000 deposited in the registry of the court by the Fidelity & Deposit Company of Maryland, amount to $164,509.21.

The total claims of the nine claimants in solido against the National Surety Company of New York, and its surety, the American Surety Company of New York to be paid out of its bond for $50,000, amount to $41,226.61, the remainder of which is to be paid by the American Surety Company to these nine claimants, after their pro rata payment from the funds of $50,000 deposited in the registry of the court by the Fidelity & Deposit Company of Maryland.

The total claims allowed, plus fees, etc., are more than the $50,000 deposited in

court by the Fidelity & Deposit Company of Maryland.

■ As all of the twenty-nine claimants have judgment in solido against the National Surety Company of New York and its surety, the Fidelity & Deposit Company of Maryland, it follows necessarily that each of these claimants must receive his pro rata share out of the $50,000 deposited by the Fidelity & Deposit Company of Maryland, the principal and surety on the bond being debtors in solido of these claimants, and the fund not being sufficient to pay all claims in solido against the debtors.

Upon the Receiver's petition the Court issued an order authorizing him to cite all Louisiana creditors to assert in the concursus proceedings any claim which they may have.

The Fidelity & Deposit Company of Maryland, the qualifying surety on the bond of the National Surety Company, and the American Surety Company, the qualifying surety for the National Surety Company, from February 24, 1931 to March 3, 1932, were cited to appear and answer to any and all claims filed herein against any of the said companies. But Woodward, Wight & Company, Ltd., brought suit only against the National Surety Company of New York and its qualifying surety, the Fidelity & Deposit Company of Maryland.

■ Appellant did not seek to obtain judgment against the National Surety Company of New York and its qualifying surety, the American Surety Company of New York, while the nine claimants herein obtained judgment in solido against the National Surety Company of New York and against both of its qualifying sureties, the Fidelity & Deposit Company of Maryland and the American Surety Company of New York.

The National Surety Company of New York, principal, and the two sureties on its bond, are all debtors in solido to these nine claimants.

Woodward, Wight & Company, Ltd., under its appeal attempts to modify the judgment in favor of these nine claimants, so as to decree that their claims allowed against the American Surety Company be paid by that company primarily and that said claimants be allowed to participate in the fund deposited by the Fidelity & Deposit Company only in the event their claims remain unpaid after full recourse has been had on the American Surety Company.

This modification of the judgment is attempted by appellant on the theory that the American Surety Company alone is primarily bound.

A complete answer to this contention is that the National Surety Company of New York, the principal on each of these bonds, is insolvent.

Necessarily, its two sureties, one on each of these bonds, are both liable primarily to these nine claimants, judgment in solido.

This is not a case where there are several sureties, each for a part, on the same bond; but the bonds are separate bonds, with a separate surety on each bond, and

the principal debtor on both bonds is insolvent.

The Fidelity & Deposit Company of Maryland, one of these sureties, has not pleaded benefit of division, but has paid the whole amount of the bond, in the sum of $50,000, into the registry of the court.

Nor has the American Surety Company, the other surety, pleaded the benefit of division, nor could it do so, since, at the same time, it denies any liability as surety. Kilgore v. Tippit et al., 26 La.Ann. 624.

Nor can the surety demand discussion before judgment, but only under execution. J. Davidson Hill & Co. v. Bourcier, 29 La.Ann. 841; Brink et al. v. Bartlett et al., 105 La. 336, 29 So. 958; R. C.C. Art. 3046.

Appellant, Woodward, Wight & Co., Ltd., does not attack the judgment of these nine claimants against the American Surety Company of New York, "but, on the contrary, urges and upholds the validity thereof," as stated in its brief filed in this case.

If the sureties themselves, under the facts of this case, can not plead the benefit of division, or of discussion at this time, it is clear that appellant, Woodward, Wight & Co., Ltd., cannot be permitted to do so, in order to modify the judgment in favor of the nine claimants herein.

(6) Intervener seeks to obtain judgment against the National Surety Co. and its qualifying surety, the Fidelity & Deposit Company of Maryland, in the sum of $15,748.08.

Intervener proved that on or about August 1, 1929, the Equitable Casualty & Surety Company became surety on a bond for $439,400 of the Levee Construction Company, Inc., a Louisiana corporation, in favor of the United States of America and furnishers of labor and material under the provisions of Section 270, title 40 U.S.C.A., known as the Heard Act. This bond was given in connection with a contract by the United States of America and Levee Construction Company, Inc., for the construction of the Bedford-Bayou Vidal Levee, Lots 1–2–3 in the Lower Tensas Levee District of the State of Louisiana.

The Levee Construction Company, Inc., was placed in receivership proceedings filed in the Civil District Court for the Parish of Orleans, in the matter entitled Acme Blow Pipe & Sheet Metal Works, Inc., v. Levee Construction Company, Inc., No. 189—825 of the docket of that court. The intervener is the holder and owner, before maturity, for materials furnished, of a certain promissory note dated May 12, 1930, drawn by the Levee Construction Company, Inc., to the order of intervener, in the sum of $13,290.31. This note bears interest at the rate of 8% from January 1, 1930, and in principal and interest calculated to January 28, 1933, amounts to $17,056.39.

Intervener sold on open account during August, 1930, and delivered to Levee Construction Company other materials in the value of $50.84.

The above amounts are subject to certain credits, as shown by the proof in this matter.

Intervener showed that materials, etc., to the amount of $4,430.10 were delivered on the job and used in the construction of the levee by the Levee Construction Company, Inc. This sum of $4,430.10 was arrived at by taking one-third of $13,290.31, being the principal sum as shown by the testimony.

One-third of the materials making up this sum was delivered and used in the construction of the levee. Intervener is therefore entitled to recover to the extent of one-third of $13,290.31 or $4,430.10.

. Due to the receivership of that company, intervener could not collect from the Equitable Casualty & Surety Company.

The National Surety Company was the qualifying surety on the bond of the Equitable Casualty & Surety Company, and, consequently, intervener now asserts its rights against the National Surety Company in this receivership.

Intervener further showed that the Fidelity & Deposit Company of Maryland was the qualifying surety on the bond of the National Surety Company and requested judgment against it.

As intervener fully proved up its claim, the Commissioner recommended that there be judgment, in solido, in favor of Woodward, Wight & Company, Ltd., in the sum of $4,430.10 against the National Surety Company and the Fidelity & Deposit Company of Maryland. ·

Upon its depositing $50,000, the amount of its bond in the registry of the court, the judgment of the lower court decreed that this company had fully and completely relieved itself from any further obligation or liability whatsoever on its bond.

As the claim of Woodward, Wight and Company, Ltd., is not contested by the surety, and is fully proved, we see no good reason why this claim should not be allowed.

It is therefore ordered that our original decree be amended by ordering that the judgment appealed from against the National Surety Company of New York and its surety, Fidelity and Deposit Company of Maryland, in favor of Woodward, Wight & Company, Ltd., in the sum of four thousand four hundred and thirty and 10/100 dollars ($4,430.10) be affirmed, with five (5) per cent interest per annum from judicial demand until paid.

It is now ordered that our original decree, as amended, be reinstated and made the final judgment of the court.

The right to apply for a rehearing in this case is reserved to Woodward, Wight & Company, Ltd., appellant.

FOURNET and HIGGINS, JJ., dissenting in part.

HIGGINS and FOURNET, Justices (dissenting in part).

We dissent from the opinion in so far as.it denies Mrs. Cobb the right to recover from the American Surety Company and in all other respects we concur.