section 1 of rule 15 of this court (67 South. xi [1]), reading as follows:

"Section 1. No application for an original writ, such as mandamus, prohibition, certiorari, writ of review, or the like, or for a rule nisi in such case, shall be entertained by the court, or any of its members, unless previously filed and docketed in the clerk's office, and unless previous notice of the intention to make such application shall have been given to the judge or judges of the inferior court, if he or they be made respondents, and to the opposing party, or his counsel; the service of such notice to be made to appear by the affidavit of the applicant or his counsel."

The fact that the application did not comply with the rule in this respect escaped our notice until called to our attention by the respondent; hence the rule nisi was improvidently granted, and must be recalled, reserving to the plaintiff the right to again make application upon complying with the rules of this court.

For the reasons assigned, the application is dismissed at the cost of the applicant.

---

(84 South. 585)

No. 23534.

# GLOBE INDEMNITY CO. v. O'CONNOR.

## In re GLOBE INDEMNITY CO.

(June 30, 1919. On Rehearing, May 3, 1920.)

*(Syllabus by Editorial Staff.)*

1. Notaries ⬦⟶11—Surety held not released by notaries' execution during term of new bond.

Surety company qualified to do business in the state under Act No. 41 of 1894, and Act No. 71 of 1904, having executed notary public bond for five-year term under Act No. 42 of 1890, § 9, was not, notwithstanding Act No. 14 of 1878, Act No. 46 of 1880, and Act No. 75 of 1888, released from liability thereunder by the notary's execution of new bond with different surety at end of first year, after institution of proceeding to test solvency of sureties on no-

[1] 136 La. xii.

tary public's bonds under Act No. 42 of 1890, § 10, where it was not declared insolvent in such proceeding and where previous to the hearing it filed proof of its qualification in Civil District Court under court rule 28, and, not having been released from liability, was entitled to premiums thereunder.

## On Rehearing.

2. Notaries ⬦⟶11—Governor only nominally a party to bonds.

The Governor is only nominally a party to notary public's bonds; the real beneficiaries or obligees being the persons who may suffer loss from the official misdoings of the notary.

3. Principal and surety ⬦⟶89—Obligor not discharged without obligee's consent.

Obligor on a contract cannot be discharged without the consent of the obligee.

4. Notaries ⬦⟶11—Sureties discharged only pursuant to some statute.

Since obligees on notaries' bonds are persons who may suffer from misdoings of notary, and since such obligees cannot be known in advance, the surety on such a bond cannot be discharged, except in pursuance of some statute authorizing such discharge.

Dawkins, J., dissenting.

Certiorari to Court of Appeal, Parish of Orleans.

Action by the Globe Indemnity Company against Robert E. O'Connor. Judgment for defendant in the city court and the Court of Appeal, and plaintiff brings certiorari. Judgment of the city court and Court of Appeal annulled, and judgment rendered for plaintiff.

Hall, Monroe & Lemann, Joseph W. Montgomery, and Walter J. Suthon, Jr., all of New Orleans, for applicant.

J. Zach Spearing, of New Orleans, for respondent.

O'NIELL, J. On the 12th of June, 1915, Robert E. O'Connor, a notary public for the parish of Orleans, made application to the Globe Indemnity Company for a bond for $10,000 for the term of five years. The application contained a covenant that the applicant would

not substitute another bond for the one applied for during the term of his office, without first notifying the company and having the company legally released from liability from and after the date of the new bond; and it was stipulated that if the applicant failed to comply with the covenant or any part of it, he should continue to pay the premium, $100 per annum. The bond was issued for the term of five years, commencing on the 21st of June, 1915; and O'Connor paid the first annual premium in advance, for the year ending on the 21st of June, 1916.

On or about the 29th of May, 1916, the district attorney, pursuant to the provisions of the Act 42 of 1890, proceeded by rule in the civil district court against all notaries public for the parish of Orleans, including Robert E. O'Connor, to test the solvency of the sureties on their official bonds. The rule was made returnable on the 13th of June, but was continued to the 26th of June, 1916. The Globe Indemnity Company was not made a party defendant in the proceedings, nor called upon by O'Connor to appear in court to prove the company's qualification as surety on the bond; nor did the company at any time appear in the proceedings or offer to make such proof. On the 21st of June, 1916, O'Connor wrote a letter to the Globe Indemnity Company, saying it would be unnecessary for the company to qualify as surety on his bond dated the 21st of June, 1915, because he was on that date giving a new bond with another surety. The company replied that the mere filing of a new bond would not release the company as surety on the bond dated June 21, 1915, and that the company would not consent to release O'Connor from his premium agreement until June 21, 1920, unless he procured from the Governor of the state a release of the company as surety in the manner provided by law.

O'Connor then wrote to the Governor and the secretary of state, asking for the release, but the reply was that the Governor was without authority to release the surety on the bond of a notary public, except in case of death or resignation from office. Thereafter, however, the secretary of state wrote O'Connor thus, "As far as this department is concerned, the filing of a new bond cancels the old," which we take to mean that the secretary of state was satisfied with the new bond that O'Connor had filed, without regard for the liability of the Globe Indemnity Company as surety on the bond dated June 21, 1915. For O'Connor did obtain a new bond, with another surety, on the 21st of June, 1916, and had it approved by the presiding judge of the civil district court, in the proceedings which had been taken by the district attorney to test the sureties on notaries' bonds; and O'Connor's new bond was filed with the secretary of state, and has been tested and approved every year in the proceedings taken annually by the district attorney to test notaries' bonds.

The Globe Indemnity Company had, previous to the 10th of May, 1915, qualified in the office of the secretary of state for doing business in Louisiana, and on that date filed in the civil district court for the parish of Orleans, in a proceeding by the district attorney to test the bonds of notaries public, a certificate of the secretary of state, showing that the company had qualified in the manner provided by Act No. 41 of 1894 and Act No. 71 of 1904, which certificate declared that it was good until the 31st of March, 1916, unless sooner revoked. Thereafter, that is, on the 16th of June, 1916, the Globe Indemnity Company filed in the civil district court, in the proceedings instituted by the district attorney to test the bonds of notaries public, another certificate of the secretary of state, showing that the company was qualified to do business in this state, and that the certificate was good until the 31st of March, 1917, unless sooner revoked.

The certificate was offered and filed in the civil district court in obedience to rule 28 of the court, which we think pertains particularly, if not only, to bonds that may be required by an order of the court, not bonds of public officials generally, viz.:

"Surety companies tendered as sureties in this court will not be accepted unless proper proof of their qualification as such is filed and offered in the archives of the court."

The Globe Indemnity Company was not judicially declared insufficient or not a good surety on the bond dated June 21, 1915, because the district attorney and O'Connor were both satisfied with the decree of the civil district court approving the new bond, furnished by O'Connor on June 21, 1916.

O'Connor refused to pay the $100 premium demanded by the Globe Indemnity Company on June 21, 1916, for the year ending June 21, 1917; and this suit was brought to collect the amount. The demand was rejected, and the suit was dismissed by the first city court; and, on appeal to the Court of Appeal, the judgment was affirmed. The case is before us on a writ of certiorari and review.

### Opinion.

[1] The record does not contain any explanation or disclose any reason why O'Connor desired to furnish a new bond on the 21st of June, 1916, without having called upon the Globe Indemnity Company to appear in response to the district attorney's rule in the civil district court, and prove the company's qualification as surety on the bond dated June 21, 1915. It is not disputed that the company was at that time, and has been at all times since the bond was issued, qualified to do business in this state, according to the requirements of the statutes, and that the company could readily have proven its qualification as a surety on O'Connor's bond. Rule 28 of the civil district court did not re-

quire that any surety company should offer and file in the archives of the court proof of the company's qualification to serve as surety on any bond that might have to meet with the approval of the court, before an occasion should arise for making such proof. As a matter of fact, the proof was offered and filed by the Globe Indemnity Company before the district attorney's rule upon O'Connor to test the qualification of his surety was tried in the civil district court—and before O'Connor had obtained a new bond with another surety. He was not put to any inconvenience in the matter of proving the qualification of the Globe Indemnity Company as surety on his bond dated June 21, 1915, and covering a period of five years from and after that date. The Globe Indemnity Company was, when O'Connor took out the new bond, and has been at all times since the 21st of June, 1915, liable as surety on the bond of that date, whatever may have been the liability of the surety on O'Connor's bond dated June 15, 1916. See Rochereau v. Jones, 29 La. Ann. 82. O'Connor did not, because he could not, release the Globe Indemnity Company from liability as surety on his bond. He did not, because he could not, comply with the covenant which was made the condition for releasing him from his obligation to pay the premium annually during the term of the bond. And we can see no reason in law or equity for releasing O'Connor from his obligation in that respect.

The judgment of the first city court and of the Court of Appeal from the Parish of Orleans is annulled, and it is now ordered, adjudged and decreed that the Globe Indemnity Company recover of and from Robert E. O'Connor $100, with interest thereon at 5 per cent. per annum from judicial demand; that is, from the 21st of December, 1916, and all costs of this suit.

MONROE, C. J., takes no part.

## On Rehearing.

PROVOSTY, J. Notaries in the city of New Orleans hold office during good behavior, and give bond in favor of the Governor of the state, conditioned for the faithful performance of the duties of their office. On a bond thus given by defendant as notary, plaintiff became surety in consideration of $100 to be paid yearly in advance. This suit is for the $100 due for the second year. The defense is that plaintiff was released from the bond at the end of the first year, and that therefore nothing is due for the second year.

No time is fixed in this bond for its duration, but section 9 of Act 42 of 1890 must be read into it, which requires the bonds of notaries to be renewed every five years, so that the bond was given to cover a period of five years. And such was the agreement of the parties. In the contract by which plaintiff agreed to go on the bond defendant declares his term of office to be five years, beginning June 21, 1915, and ending June 21, 1920.

[2, 3, 4] The Governor is, of course, only nominally a party to the bond; the real beneficiaries, or obligees, are the persons who may suffer loss from the official misdoings of the notary. Now, as the obligor on a contract cannot be discharged without the consent of the obligee, and the obligee, on a bond like the one here in question cannot be known in advance, it follows that the surety on such a bond cannot be discharged except in pursuance of some statute authorizing the discharge. This is a plain proposition.

Acts 14 of 1878, 46 of 1880, and 75 of 1888 provide for the release of sureties on official bonds, but no contention is made that they have any application to the present case. The contention is that plaintiff was released under the operation of section 10 of Act 42 of 1890, which reads:

"Be it further enacted, etc., that it shall be the duty of the district attorney of the parish of Orleans to institute proceedings by rule in the civil district court of said parish at least once every twelve months, and oftener if he deem it proper and necessary, on all notaries in said parish to test the surety on their official bonds, and should the sureties on said official bonds so tested, be judicially declared not good and solvent as required by law, the notary whose surety has been so declared shall pay costs of said rule and shall be allowed thirty days within which to give a new bond, and on his failure to do so within that time, shall forfeit his commission and turn over his notarial archives and records to the custodian of notarial records."

Pursuant to this statute, the district attorney took a rule on defendant, returnable June 13, 1916, eight days before the expiration of the first year of the term of the bond. In answer to this rule the defendant, instead of testing the surety on his bond, as required by this statute, proceeded to give a new bond, and now argues that, inasmuch as the new bond was accepted by the court, and a notary can have but one bond at a time, the first bond was vacated, and plaintiff released.

According to this, a notary may change his bond every year, despite the statute which by fixing the term of its renewal at five years fixes at that period the term for which it is given. This court has expressly decided the contrary. Rochereau v. Jones, 29 La. Ann. 82.

Counsel say that since the date of that decision the law has been changed. It has not been changed in the present connection, for that decision was rendered in 1877, and since 1855 the law has been precisely as now that notaries must give bond and renew same every five years. The only difference between the law as then existing and as now is that by the said section 10 of the act of 1890, hereinabove transcribed, the district attorney is required to test the bonds of notaries yearly by means of a rule filed in court.

When, on such a rule, the surety on the bond is found not to be good, the court may

so decree, with the effect that a new bond is given which necessarily supersedes the first. But in the present case, there has been no such decree. The plaintiff has not been found to be not a good surety. That question was not submitted to the court for decision. Had it been, the decision would have been that plaintiff was a good surety; for the same court, at the same time, in testing the bonds of three other notaries, so decided plaintiff to be. The said statute does not empower the court to vacate a good bond, or discharge a good surety, but only to pass upon the solvency of sureties on notarial bonds. Plaintiff's solvency as surety on defendant's bond was not submitted to be passed upon; and the court made no decision and rendered no judgment in that regard.

The reason assigned by defendant for giving a new bond is that plaintiff failed to comply with the following rule of the civil district court:

"Surety companies tendered as sureties in this court will not be accepted unless proper proof of their qualifications as such, is filed and offered in the archives of this court."

Defendant assumes that the burden of "filing and offering" this proof in the archives of the court does not rest upon the party upon whom rests the obligation of making proof of the solvency of the surety, but upon the surety, who is no party to the rule, and receives no notice of its pendency. But granting this to be so, the plaintiff company did, on June 21, five days before the day fixed for the trial of the rule to test its solvency, "file and offer" this proof in the court. So that the entire foundation for the said reason of defendant for changing sureties was removed several days before the time when the test rule would come up for trial. The return day for the rule was, at first, June 1, 1916. Its turn on the docket not having been reached on that day, the trial was postponed to June 26. Plaintiff knew nothing of the rule until receiving a letter from defendant dated June 21, advising that he was giving a new bond with another surety. Plaintiff at once answered that it could not be released from the bond, and could not release defendant from the payment of the $100.

The judgment heretofore handed down by this court is reinstated, and made the final judgment of the court.

DAWKINS, J., dissents.