SAMUEL, Judge.
This is an appeal from a judgment denying an application for a writ of mandamus. The mandamus was sought (for the purpose of professional improvement) by Frances Collins, a music teacher,[1] against the Orleans Parish School Board to compel the Board to grant her a sabbatical leave with pay for the 1977 fall semester.
These facts are not in dispute: Relatrix’s application was timely filed and she had fulfilled the employment requirements for a sabbatical as set out in R.S. 17:1171. She is certified in vocal music for all grades, has a masters degree in music education, and teaches vocal and general music in a junior high school in New Orleans. In the spring of 1977 she applied for a sabbatical leave to study Vocal Pedagogy and Systems of Teaching Voice at Loyola University in New Orleans. However, she amended the application to change the courses to Style I and Opera Literature.
The trial judge found, and we agree, that a few years prior to the incident in suit teachers in the public schools of Orleans Parish were seriously abusing the privilege of sabbatical leave. As stated in his Findings of Fact and Reasons for Judgment:
“Wholesale abuse was uncovered. Teachers on sabbatical and being paid to increase their education and knowledge were not even attending school; those off for rest and relaxation were found to be gainfully employed in full-time jobs; 69% of the teachers who took sabbatical never even returned to teaching; over one million dollars per year is spent on sabbatical leave pay for teachers.
The Board tried to resolve the matter by creating a separate sabbatical committee composed of seasoned school administrators and ex-teachers. That committee revised the form for sabbatical-leave requests, to have teachers indicate with more particularity what courses they were to take while on sabbatical, where the teacher would go to school for these courses, etc. Teachers were individually interviewed, questioned and given the opportunity to further explain their intentions and plans for sabbatical leave. Every application was processed and studied.”
The committee above referred to rejected appellant’s amended application because:
“There is no assurance of mutual benefit. The courses planned do not appear to contribute substantially to the teacher’s ability to perform her present tasks nor do they offer the promise of the kind of growth needed for the future in her present assignment.”
Following that rejection, appellant obtained a leave without pay to pursue the courses specified in her amended application, which courses she took at Florida State University.
The pertinent law relative to sabbatical leave, originally Act 319 of 1940, is contained in R.S. 17:1171-1186. Among other provisions, it states that members of the teaching staff “shall be eligible” for sabbatical leaves for the purpose of professional improvement under specified circumstances (R.S. 17:1171); that the Board be informed, originally in the application and by written reports within thirty days after the beginning of each semester and after the end of the leave, of the manner in which the leave will be and has been spent (R.S. 17:1175 and 1178); and that if the sabbatical is not being spent within the intent and purpose of the law, it may be terminated by the *1378 superintendent as the elected agent of the Board (R.S. 17:1179).
In this court appellant contends: (1) As she had complied with all the eligibility requirements, it was the mandatory duty of the Board under R.S. 17:1176 [2] to grant the sabbatical; and, alternatively, (2) the Board acted in an arbitrary and capricious manner in rejecting the requested sabbatical.
Relative to her first contention, appellant argues that where the purpose of the leave is for professional improvement through courses at an approved educational institution (R.S. 17:1177) and there are no more than 5% of the teaching corps on such leave (R.S. 17:1176) parish school boards do not have the discretion to deny, and cannot deny, a sabbatical leave to an applicant who has procedural and eligibility requirements and that budgetary considerations operate only insofar as to permit parish school boards to limit the total number of sabbaticals to 5% of the teachers on such leave. We do not agree.
As stated in the case of J. M. Brown Const. Co. v. D & M Mechanical Con., Inc.:[3]
“It is a familiar rule of statutory construction that the general purpose and object of the law must be kept in mind and the statute given such fair and reasonable interpretation as will effect the purpose and object for which it was enacted.”
In the instant case the construction urged by appellant, allowing a teacher to be the sole and only judge of what courses will be taken and including a disregard of a school board’s ability or lack of ability to pay for the same, would be contrary to and would defeat the purpose and object of our laws relative to public education. That purpose and object, as we understand it, is solely and only the education of the people of Louisiana. Our understanding is compelled by a reading of the Preamble to Article VIII of the Constitution of 1974[4] and of Article VIII, § 1 of that Constitution.[5]
We believe school boards and their employees serve for the singular purpose of educating the students. It necessarily follows that, as sabbatical leaves are designed for the betterment of the students, public school boards must have, and do have, the discretionary authority to grant or reject applications for sabbatical leaves for the purpose of professional improvement. For example, a school board must have the authority to deny a request for leave to study veterinary medicine at an accredited school of higher learning. Such a course would be of no material value in assisting a teacher in a public school and would be of no value to the students of that school. And with even more certainty, the school board must have the authority to take its financial condition into consideration. If the board does not have sufficient finances to pay for sabbatical leaves otherwise required, it cannot be said that it must close a classroom or *1379 discontinue the teaching of one or more subjects in order that its teachers could enjoy sabbaticals.
Nor do we agree with appellant’s second, alternative contention, that the Board acted in an arbitrary and capricious manner in rejecting the requested sabbatical. Where a public school board is granted administrative and executive functions and responsibilities, the courts will not interfere with its judgment based upon substantial evidence. In State v. Jefferson Parish School Board,[6] the Supreme Court of Louisiana quoted the following statement with approval:
“There is nothing more firmly established in law than the principle that, within the limits of their authority, the power and discretion of legally created governing boards is supreme. Their wisdom or good judgment cannot be questioned by the courts. Members of these boards are appointed or elected because of their peculiar fitness for the post. Judges are elected because of their legal knowledge and ability. They are not experienced in the business affairs of Parishes and municipalities, * * * or the conduct of a public school system. A presumption of legality and regularity attaches to the action of all government boards. It is only when it is clearly shown that the action of such a board is beyond its authority or is arbitrary, unreasonable, or fraudulent that a court is justified in interfering.”
In this case we are of the opinion the Board did not abuse its discretion or act in an arbitrary or capricious manner. We agree with the finding and conclusion of the trial judge on this issue:
“The Court does not find the school board to have acted arbitrarily in these premises. That board’s special committee, composed of experienced teachers and school administrators is in a far better position to determine what relevancy a course in opera literature has to teaching a vocal music course at the junior high school level. It lies within the discretion of the school board to determine if the additional instruction the teacher seeks to take enhances both the teacher’s ability to teach and is of benefit to her students. The evidence is that additional study in opera literature would be of little significance to (for) students in junior high school.
Further, aware of the fact that the plaintiff is herself an active member of the local opera company, etc. there is little doubt but that the additional studies would improve her personal status, made her more voiced or educated among her opera peers, but would have no corresponding value for her students.”
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

LEMMON, J., dissents and assigns reasons.

. The suit was filed originally by three teachers, two of whom withdrew.

. R.S. 17:1176 reads:
“Any applicant who, at the expiration of the semester in which he applies, is ineligible for the sabbatical leave requested or who has not complied with the provisions of R.S. 17:1172 through 17:1174 [relative to the filing of applications for leave, method of selecting applicants when some cannot be granted, and notification of the grant or rejection of an application], shall have his or her application rejected, but all other applicants shall have their applications granted, provided that all leaves requested in such applications could be taken without violating the following provisions: At no time during the school year shall the number of persons on sabbatical leave exceed five per centum of the total number of teachers employed in a given parish; in cases of sick leave this limit of five per centum may be exceeded.” LSA-R.S. 17:1176. (Emphasis added).

. La., 275 So.2d 401, 404.

. “The goal of the public educational system is to provide learning environments and experiences, at all stages of human development, that are humane, just, and designed to promote excellence in order that every individual may be afforded an equal opportunity to develop to his full potential.”

. “The legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system.”

. 206 La. 317, 19 So.2d 153, 167.